**Steven MORAN, by and through his Guardian Ad Litem, Robert Graham, Plaintiff,**

v.

**SCHOOL DISTRICT #7, YELLOW-STONE COUNTY, Defendants.**

**Civ. No. 1066.**

United States District Court,
D. Montana,
Billings Division.

Sept. 11, 1972.

James D. Walen, Billings, Mont., for plaintiff.

C. W. Jones, Billings, Mont., Chadwick Smith, and Harold Hanser, County Atty., Yellowstone County, Billings, Mont., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM D. MURRAY, Senior District Judge.

Before the court is a motion for preliminary injunction. Plaintiff, Steven Moran, is a married student attending Laurel High School, Laurel, Montana, administered by the Board of School Directors of School District #7, Yellowstone County (hereinafter referred to as the Board). The motion for preliminary injunction asks that the Board be enjoined from applying its rule [1] which

---

1. *School Board Policies, School District No. 7, Laurel, Montana,* Chapter V., Section 3, p. 31:

    Paragraph 5. *Special Students*
    POLICY. The Laurel Schools recognize the right of every person in Laurel to obtain the greatest benefit that he or she can capably obtain through the educational program offered by the school system.

    The school is also aware that certain people by their own acts have forfeited privileges that are separate from the regular curriculum but form a part of total pupil life. In this group are listed the following:
    2. *Married pupils, either male or female.* Shall attend classes only and not be required to attend study hall. They may not participate in extracurricular activities.

prevents married students from participating in extracurricular activities until there can be a full hearing on a permanent injunction and declaratory judgment as to the rule's validity. After hearing on the motion the court has concluded that the injunction should issue. The Board has held that plaintiff is ineligible to play varsity football at Laurel High School and the effect of the preliminary injunction is to allow his participation in all extracurricular activities at Laurel High School until the matter is resolved.

■ The complaint invokes jurisdiction of the court under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. The courts have traditionally interpreted § 1343 as protecting only "personal rights" but in a recent case the Supreme Court held that it conferred jurisdiction to infringement of "property rights" as well. Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Earlier the Court had held that "(A)llegation of facts constituting a deprivation under color of state authority of a right guaranteed by the Fourteenth Amendment satisfies" the purpose of the § 1983 to enforce the provisions of the Fourteenth Amendment in the federal courts. Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960). The complaint alleges that the application of the Board's rule to the plaintiff will deprive him of equal protection, freedom of association, and freedom of privacy in marital relations. The court need not decide whether or not all these alleged deprivations have merit. It is enough that it is clear the effect of the Board's rule is to discriminate against married persons and that discrimination results in a denial of equal protection should there be no reasonable basis or justification for the classification. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). Violation of the equal protection clause falls within the jurisdiction of § 1983. Moss v. Hornig, 314 F.2d 89, 91 (2nd Cir., 1963).

■■ If that is not enough, the 10th Circuit held in Williams v. Eaton, 443 F.2d 422 (1971) that allegations of the loss of an opportunity to play college football constituted a valuable right which could be the basis of a complaint under § 1983. The complaint alleges that the plaintiff will be deprived of an opportunity to obtain a college scholarship if he is not allowed to play football his senior year. High school football is no less important an opportunity than college football and therefore the complaint makes out a claim under § 1983 upon which relief can be granted. The constitution and statutes of the state of Montana (§ 75–6302 R.C.M.1947; Art. XI, § 7, 1889 Montana Constitution) provide that everyone between the age of six and twenty-one shall be provided the opportunity to attend the state's public schools without charge. Thus the right to public education is a 'civil right' guaranteed by Montana law and it is the infringement of this right which is the gravamen of this complaint.

At the hearing before the court the parties presented to the court the following stipulation which the court adopts as its findings of fact:

1. The married student policy which denies married students the right to participate in extracurricular activities, of School District #7, Yellowstone County, as reported in School Board Policies, Chapter V., Section 3, Paragraph 5, Number 2, was instituted as it was the opinion of the school board that the following conditions exist:

(a) Married students assume new and serious responsibilities. Participation in extracurricular activities tends to interfere with discharging these responsibilities;

(b) A basic education program is even more essential for married students. Therefore, full attention should be given to the school program in order that such students may achieve success;

(c) Teenage marriages are on the increase. Marriage prior to the age set by law should be discouraged. Exclud-

ing married students from extracurricular activities may tend to discourage early marriages;

(d) Married students need to spend time with their families in order that the marriage will have a better chance of being successful;

(e) Married students are more likely to drop out of school. Hence, marriage should be discouraged among teenage students.

2. Steven Moran, the Plaintiff herein:

(a) Is seventeen (17) years old, married and a student at Laurel High School, subject to the jurisdiction of School District #7, Yellowstone County;

(b) Was married in November of 1971 with the consent of his parents, in full compliance with the laws of Montana;

(c) Had prior to his marriage, participated in football and other extracurricular activities;

(d) Was subsequent to his marriage denied participation in said activities, solely on the basis of School District #7's married student policy;

(e) Is not a discipline problem nor has he created a disturbance at the school which interfered with school functions;

(f) Started football practice on August 21, 1972, under the authority of a Federal Court temporary Restraining Order, and that it is essential that he play football in order to be eligible to receive an athletic scholarship;

(g) Is of the opinion that the married student policy has isolated him from his friends and fellow students;

(h) Is of the opinion that the married student policy has interfered with his marriage and may cause him to look upon his marriage as a hinderance to his future educational opportunities.

3. The manual of School Board Policies of School District #7, Yellowstone County, explains the policies and goals of said School District #7.

■ Judge Trask in King v. Saddleback Junior College District, 425 F.2d 426 (9th Cir., 1970) has set down the factors to be considered in granting a preliminary injunction in these types of cases. They are: 1. the relative importance of the rights asserted, 2. the acts to be enjoined, 3. the hardship that would result from granting or refusing to grant the injunction, 4. the probability of ultimate success, and 5. the public interest.

■ The importance of the right asserted here cannot be denied. As pointed out above Montana's 1889 Constitution and the statutes of the state provide a guarantee of education to all citizens between six and twenty-one years. Further the Montana Constitution Article XI, § 1 states that "[i]t shall be the duty of the legislative assembly of Montana to establish and maintain a general, uniform and thorough system of public, free, common schools." That section and what constitutes a "thorough system" of public schools has been interpreted by the Montana Supreme Court in McNair v. School District No. 1, 87 Mont. 423, 288 P. 188 (1930) and that decision was approved of in the recent case of Granger v. Cascade County School District, No. 1, Mont., 499 P.2d 780, decided July 20, 1972. The following language found in *McNair*, supra, p. 190 is quoted in *Granger* supra, 499 P.2d p. 784:

"What, then, constitutes a 'thorough' system of education in our public schools? By its voluntary act, the state has assumed the function of education primarily resting upon the parents, and by laws on compulsory education has decreed that the custody of children be yielded to the state during the major portion of their waking hours for five days in the week, and, usually, nine months in the year. In doing so, the state is not actuated by motives of philanthropy or charity, but for the good of the state, and, for what it expends on education, it expects substantial returns in good citizenship. With this fact in mind, it is

clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship—the good citizen, man or woman who is of the greatest value to the state, is the one whose every faculty is developed and alert.

"Education may be particularly directed to either mental, moral or physical powers or faculties, but in its broadest and best sense it embraces them all . . . To educate is to 'lead forth, bring up . . . to develop physically,' and education is 'the totality of the qualities acquired through individual instruction and social training, which further happiness, efficiency and capacity for social service of the educated.'"

In relying on this case the present Montana Supreme Court has recognized the importance of extracurricular activities as an integral part of the total education process. Courts have begun to recognize that extracurricular activities such as football are "generally recognized as a fundamental ingredient of the educational process." Kelley v. Metropolitan County Board of Education of Nashville, etc., 293 F.Supp. 485, 493 (D.C. 1968). See also Lee v. Macon County Board of Education, 283 F.Supp. 194 (D.C.1968). Thus it is apparent that the right to attend school includes the right to participate in extracurricular activities.

■ In considering the acts to be enjoined the Court is reminded by Judge Trask in King v. Saddleback Junior College District, supra, that where school authorities are shown to have formally acted, the courts should interfere only with great caution. This however does not prevent the Court from inquiring into the basis of authority for the action and the effect it will have. Here that inquiry reveals at the outset that the effect of the board's rule is to discriminate against married persons, a class who have the greatest and most funda-

mental respect of society. Often it is difficult for the court to determine what constitutes public policy but in this case public policy in Montana with respect to marriage is clearly set out in § 48–142, R.C.M.1947:

"Legislative intent—public policy. It is the intent of this act to promote the stability and best interest of marriage and the family. Marriage is the institution that is the foundation of the family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state. The consequences of the marriage contract are more significant to society than those of other contracts, and the public interest must be taken into account always. The seriousness of marriage makes adequate premarital counseling and education for family living highly desirable, and courses thereon are urged upon all persons contemplating marriage. The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned."

The defendants argue that plaintiff was informed of the Board's ruling but did in fact become married. The implication is that if he wanted to play football he did not have to get married. Carrying this one step further the Board might argue that if he still wants to play football he can obtain a divorce. Whether or not any individual desires to marry is a matter of personal choice under Montana Law and for those under the age of consent the courts are given a supervisory role to determine whether it is in the best interests of the applicant and of the established public policy of the state of Montana. § 48–143(3) R. C.M.1947.

■ The Board's rule works contrary to this established policy. This is an area in which the societal values are so complex that it should be regulated by the legislature and there is a presumption against any statutory grant of

authority to interfere in this area unless the authority is explicit. See Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Statute: A Nonconstitutional Analysis, 117 Univ.Penn.L.Rev. 373, 387–388 and note 60; also consistent with this analysis is McNair v. School District No. 1, supra, 288 P. p. 189 quoted below. Moreover there is another rule which prohibits the delegation to administrative agencies of power to prescribe or impose punishment. See Lipke v. Lederer, 259 U.S. 557, 562, 42 S.Ct. 549, 66 L.Ed. 1061 (1921) and Goldstein, supra, note 70.

The basis of the board's authority is found in § 75-5932 and § 75-5933 R.C.M.1947. There is nothing in either of those statutes which indicates that the board's authority extends beyond the constitutional mandate to the legislature to establish a "thorough system" of public schools. Article XI, § 1, 1889 Montana Constitution. The power of the board of trustees has been interpreted as follows:

"A school district is a political subdivision of the state, created for the convenient dispatch of public business. The board of trustees, therefore, constitutes the board of directors and managing officers of the corporation, and may exercise only those powers expressly conferred upon them by statute and such as are necessarily implied in the exercise of those expressly conferred. The statute granting power must be regarded both as a grant and a limitation upon the powers of the board. This is the rule of construction applicable to all statutes granting and defining the powers of such municipal or quasi municipal bodies." McNair v. School Dist. No. 1, supra, 288 P. page 189.

Since there is no authority expressly granted to the board to regulate marriages and since there is clear public policy with regard to marriage then to constitute a valid exercise of state law the school board's authority to discriminate on the basis of marriage must first

be found in its expressed function of providing education and then balanced against the interest which it may violate.

■ The public interest in this case is of high importance for Montana citizens have through their legislature expressed great concern for both the institution of marriage and the education of the young. The plaintiff has alleged that the discrimination here violates rights under the first amendment and the due process and equal protection clauses of the 14th Amendment. The court need not determine whether all these allegations have merit. The complaint alleges that the action of the school board constitutes a violation of equal protection in that it discriminates against married persons without a rational basis. This shifts the burden upon the School board to show that it has reasonably acted within statutory authority for a legitimate purpose for without this showing the discrimination on the basis of marriage is arbitrary and invidious. Clearly the public has an interest in this.

The probability of ultimate success in this case will be determined by the school board's showing that it has operated within its authority and that its interests override any other interests which may be effected by its action. In this context the school board has set down five reasons for the establishment of its discriminatory rule:

1. Married students assume new and serious responsibilities. Participation in extracurricular activities tends to interfere with discharging these responsibilities.

2. A basic education program is even more essential for married students. Therefore, full attention should be given to the school program in order that such students may achieve success.

3. Teenage marriages are on the increase. Marriage prior to the age set by law should be discouraged. Excluding married students from extra-

curricular activities may tend to discourage early marriages.

4. Married students are more likely to drop out of school. Hence, marriage should be discouraged among teenage students.

At the outset it is apparent that these enumerated reasons are unpersuasive and do not provide a basis under state law for the board's action. There is no legislative authority for school board action in the area of matrimony. What married persons do with their time outside of school and how they discharge their matrimonial responsibilities is outside the statutory authority of the school board. While it is indeed true that a basic education is important to married students the very allegations in this suit indicate that academic success beyond high school may depend in part upon participation in extracurricular activities. Further, a simple requirement that those unable to keep up academic work may not participate in extracurricular activities would have the same effect as limiting married students to academic work if the extra activities are the cause of the academic failure but this of course would be in no way discriminatory. This simple and easy method of ensuring that participation in extracurricular activities by any student is not done at the expense of his academic work dramatizes the prejudicial and invidious effects of the Board's rule.

The defendant alleges that married students are more likely to drop out of school. However the discouragement of teenage marriages has not been explicitly given over to the school board under state law nor can it be implied from the board's statutory authority. Moreover the effect of the board's rule is to punish those who have already acted under state law and who we must assume have received the approval of the judiciary that the marriage is in the best interests of the public policy of the state of Montana. This coercive action is the very antithesis of the tolerance, patience and understanding normally associated with the process of education. Certainly under the statutorily established public policy that advocates and urges premarital counseling and courses on family living upon all persons contemplating marriage (§ 48–142, R.C.M.1947) the school board has been encouraged to provide courses in this area to its pupils. In these courses which constitute a legitimate function of the board (i. e. education) the emphasis could appropriately be to discourage early marriages. To punish married students in order to discourage marriage among teenagers is contrary to public policy as above set forth. The married student has entered into the most sacred institution in society, one which society has chosen to encourage and preserve not punish. In general the effect of marriage is to broaden the opportunity of those involved and to bring them under benefits not afforded those who are single. It may be that teenage marriages are to be discouraged but this cannot be done by discriminating against those already married without a showing of an overriding social interest. With educational means at hand which will work toward these same ends without discriminating it does not appear that the school board's authority or its interest in education are adequate to provide that overriding interest.

The hardship which will result from refusing the injunction is indeed permanent. Steven Moran will be unable to play football in his last year of high school. The opportunities and benefits afforded by participation in this extracurricular activity will be forever lost. The hardship resulting from granting the injunction will be much less and in fact may be negligible. The school board did not allege that Steven's participation in extracurricular activities will result in any form of moral pollution of the student body or that participation in extracurricular activities will disrupt the education process or cause disciplinary problems. These are legitimate concerns of the school board and if the record as a whole establishes that

there is substantial evidence to support a school board's determination that married students' participation in extracurricular activities will result in a reasonable likelihood of moral pollution, disruption, or disciplinary problems within the student body then the school board's regulation may be upheld as a valid exercise of authority. This is the test articulated by Professor Goldstein supra, at page 429 and the court is persuaded that it is indeed appropriate.

It is incumbent upon the court to point out that the courts have held that marriage alone is not a reasonable grounds for expulsion (McLeod v. State of Mississippi, 154 Miss. 468, 122 So. 737, 63 A.L.R. 1164 (1929)); that premarital pregnancy is not a sufficient evidence of immorality to justify expulsion, (Nutt v. Goodland Board of Education, 128 Kan. 507, 278 P. 1065 (1929); and that unwed mothers may not be excluded from public schools unless they are found so lacking in moral character that their presence in schools will taint education of other students (Perry v. Grenada Municipal Separate School District, 300 F.Supp. 748 (1969). Without evidence of their corrupting influence the argument that in the informal atmosphere of extracurricular activities married students are more likely to have an undesirable influence on other students is hardly persuasive. In light of the above decisions it appears that sweeping conclusions by the board that association will be corrupting must be based upon substantial evidence recognizable by the court.

The burden upon the school board is a heavy one. The above analysis reveals that school board action may be carefully scrutinized to determine whether it falls within the Board's authority to educate pupils. It is doubtful that the rule which discriminates against the plaintiff is within this authority. The basis for the board's rule as set out in its brief and stipulation of facts are outside its authority. See above discussion and Goldstein supra. The parties entered into a stipulation within which they agreed that plaintiff is not a discipline problem nor has he created a disturbance at the school which will interfere with school functions. The only rational basis left for the board's rule is that the presence of married students will result in a reasonable likelihood of moral pollution and this must be shown by substantial evidence. "'Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision.'" Morey v. Doud, supra, 354 U.S. p. 464, 77 S.Ct. p. 1349.

## ORDER

This cause having come on for hearing on August 30, 1972, on the verified complaint and motion for preliminary injunction of the plaintiff; and due notice having been given to the defendants and the attorneys for both the plaintiff and the defendants being present; and the court having considered the stipulation of facts entered into by all of the parties and having considered the arguments of counsel the court, for the reasons set out above, the relative importance of the rights asserted, the acts to be enjoined, the hardship that would result from granting or refusing to grant the injunction, the probability of ultimate success, and the public interest, dictate that a preliminary injunction issue

Therefore it is ordered and this does order that the defendants, School District #7, Yellowstone County, Montana and its agents are hereby restrained and enjoined from enforcing against the plaintiff, Steven Moran, the rule of the Board of Directors of School District #7 which prohibits married students' participation in extracurricular activities or in anyway denying or prohibiting his participation in extracurricular activities because of his married status. This order is to remain in effect pending hearing and a final decision on the merits of this cause.