## Delisio v. Ellwood City Area School District

*George F. Micacchione*, for appellants.
*Philip Morris*, contra.

HENDERSON, *P. J.*, February 5, 1975—

### I.  FACTUAL BACKGROUND

On February 22, 1974, the senior class of Lincoln High School, Ellwood City, sponsored a "Donkey Basketball" game between members of the senior

class of Lincoln High School and Riverside High School, a neighboring school. During the course of this game, an altercation broke out between several of the students from both schools who had been viewing the game from the stands. One of the participants in the altercation was the minor appellant, Michael Delisio.

A substitute teacher at Lincoln High School, who was also chaperoning this event, Miss Judith Dici, saw appellant kick another student on the floor. Miss Dici approached appellant and told him that she had seen what he had done and told him to leave. During the verbal exchange with Miss Dici, appellant directed abusive language against her. In response to this, Miss Dici approached a full-time teacher in charge of the event, Mr. George Jinar, and related the incident to him. Mr. Jinar then approached appellant and ordered him to leave. During their conversation with appellant, both teachers claimed that they detected the smell of alcohol on appellant's breath. Both teachers testified that appellant did not stagger or slur his speech, but both were convinced that they detected the smell of alcohol on his breath.

Appellant was suspended from school for three days as a result of the abusive language he had used against Miss Dici. The legality of this particular suspension has not been questioned and is not before the court at this time.

On February 27, 1974, appellant was suspended from participating in all extracurricular activities, social or otherwise, to include participation in intra-mural sports, for a period of one semester (90 school days) for violating the Lincoln High School policy against student drinking. The pertinent part of this policy provides that a student who is under

the influence of alcoholic beverages or who reflects obvious evidence of having partaken thereof will be suspended from all extracurricular activities for a period of one semester (90 school days).

Upon appellant's request, a hearing was held on March 25, 1974, concerning the charges against appellant. On March 26, 1974, appellant was notified that the suspension had been upheld.

Appellant then appealed to this court on the grounds that the above mentioned hearing was not conducted in conformity with the Local Agency Law of December 2, 1968, P.L. 1133, secs. 1-11, 53 PS §§11301, et seq. This court remanded the case to the local school board for a hearing in conformity with the Local Agency Act. A supersedeas was also granted at that time, No. 144 of 1974 M.D.

On May 24, 1974, the Ellwood City School Board held an additional hearing concerning appellant's suspension. On June 13, 1974, the school board members voted 5-3 with one abstention to uphold appellant's suspension. Appellant then appealed to this court from that decision and this is the matter presently before the court.

We affirm the Ellwood City School Board's decision.

## II. ISSUES PRESENTED

Appellant challenges the school board's decision to uphold the suspension on the following grounds:

(1) That the "Donkey Basketball" game was not a school-related function within the meaning of the Public School Code and, therefore, the school board and the school officials were without jurisdiction to suspend him as a result of any incidents occurring during that game.

(2) That the school board's decision that appellant had obviously partaken of alcoholic beverages is not supported by the evidence.

(3) That appellant was denied a full and fair hearing because of the previously exhibited bias of one of the members of the school board.

(4) That the enforcement of this suspension denies appellant the equal protection of the laws.

(5) That the Lincoln High School policy against student drinking is unconstitutionally vague.

## III. SCHOOL-RELATED FUNCTIONS

Appellant contends that the "Donkey Basketball" game in question was not a school-related function within the meaning of the Public School Code, Act of March 10, 1949, P.L. 30, art. V, sec. 511, as amended, 24 PS §5-511. In this we do not agree. Article V, section 511(a) specifically authorizes school boards to adopt and enforce reasonable rules and regulations regarding ". . . the organization, management, supervision, control, financing or prohibition of organizations, clubs, societies and *groups of the members of any class or school* and may provide for the suspension, dismissal, or other reasonable penalty in the case of any . . . pupil who violates any of such rules or regulations." (Emphasis supplied.) Such a broad legislative mandate does not merit a narrow judicial construction.

Appellant cites Judge Laub's opinion, quoted with approval by the Pennsylvania Supreme Court in Pease v. Millcreek Township School District, 412 Pa. 378, 195 A. 2d 104 (1963), to support his position. However, the Pease case is clearly distinguishable from the present case. In Pease, a history teacher at McDowell High School in Erie, Pennsylvania, was assigned to act as a sponsor for a boy's

bowling club. The bowling sessions were held at a privately owned bowling alley one day a week after school hours. The boys in the bowling club did not compete intra-murally or inter-scholastically. While the bowling club had received the school board's sanction, it was simply a voluntary association of boys who desired to bowl. The sponsor was not to teach, coach or instruct in bowling, but simply be in attendance at the bowling alley while the bowling took place to maintain discipline, if necessary.

The Pennsylvania Supreme Court held that this was not a school-related function within the meaning of section 5-511 of the Public School Code. The court quoted Judge Laub in explaining their decision. Viewed as a whole, it is apparent that both Judge Laub and the Pennsylvania Supreme Court emphasized the "off the premises" nature of the bowling club in arriving at their decision.

The court said: "But, schools have no duty to supervise students in their play after school and *off school premises* when such play is not genuinely connected with the school program . . . Supervision of after-school, *off the premises* play must fall either upon the family or a social agency created for the purpose whenever the sole activity is recreation and fun unrelated to education. Concededly, generalities in these matters are impermissible, for each case must stand on its own facts. There are circumstances under which school supervision off the school premises after hours is indicated and proper, and there are circumstances under which it is improper."

Here, the "Donkey Basketball" game was conducted at the Lincoln High School gymnasium and sponsored by the senior class. The event was spon-

sored to raise funds for the senior class. School officials gave permission for the use of the gymnasium and tickets for the event were sold through the school. Given these facts, the game was a school-related activity within the meaning of section 5-511 of the Public School Code.

## IV. SUFFICIENCY OF THE EVIDENCE

Under the Local Agency Law of December 2, 1968, P.L. 1133, sec. 8, 53 PS §11308(b), the court will affirm an adjudication before an administrative agency unless a finding of fact necessary to support the adjudication is not supported by substantial evidence. In general, see Edwards v. Jersey Shore Area School District, 7 Pa. Commonwealth Ct. 636, 301 A. 2d 116 (1973); 4 Davis, Administrative Law Treatise, §§29.01 and 29.02 (1958); Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S. Ct. 456, 95 L. Ed. 456 (1951).

Here, the school board based its decision to suspend appellant upon the factual finding that he had "obviously partaken" of alcoholic beverages. The school board based this finding on the testimony of two teachers who stated that they had detected the smell of alcohol on appellant's breath. We are satisfied that this evidence was sufficient to support this conclusion of fact. While the courts may not always be in agreement with the factual findings of an administrative agency, nevertheless they should be reluctant to substitute their judgment for that of the administrative agency created for that purpose: Department of State v. Bewley, 1 Pa. Commonwealth Ct. 85, 94, 272 A. 2d 531, 535 (1971).

## V. ALLEGED BIAS OF SCHOOL BOARD MEMBER

The bias of an administrative judge concerning his point of view about issues of law or policy, or his belief in the objectives of law or policy, or his belief in the objectives of the statute which his agency has the power to enforce is not considered a proper ground for disqualification: Pennsylvania Publications, Inc. v. Pennsylvania Public Utility Commission, 152 Pa. Superior Ct. 279, 32 A. 2d 40 (1943), reviewed on other grounds 349 Pa. 184, 36 A. 2d 777, 153 A.L.R. 457 (1944). However, the hostility of an administrative judge against a particular party can vitiate the fairness of a hearing even in the absence of reversible error: Gardner v. Repasky, 434 Pa. 126, 252 A. 2d 704 (1969). In general, see 2 Davis, Administrative Law Treatise, §§12.01 and 12.02; Fed. Trade Comm. v. Cement Institute, 333 U.S. 683, 68 S. Ct. 793, 92 L. Ed. 1010 (1948); Texaco v. Fed. Trade Comm., 336 F. 2d 754 (D.C. Cir. 1964).

Appellant contends that one of the members of the school board, Mrs. Stanley, exhibited bias against his particular case by making a statement to the Ellwood City *Ledger* prior to the hearing before the school board in which she indicated that she had prejudged his case. At the school board hearing, counsel for appellant requested that Mrs. Stanley disqualify herself. Mrs. Stanley refused and contended that she had been misquoted in the press. Thereafter, appellant introduced no further evidence of any kind to substantiate the claimed bias of Mrs. Stanley. The school board allowed Mrs. Stanley to remain and participate in the school board's decision.

While the Local Agency Law does not specify a fixed procedure for disqualifying an administrative judge because of personal bias, the weight of authority in other areas clearly shows that the mere assertion of personal bias is insufficient to disqualify an administrative judge. The burden is on the party asserting bias to establish the truth of the charges before an agency must disqualify an administrative officer. See generally 2 Davis, Administrative Law Treatise, §12.05 (1958). While a hearing before a fair and impartial tribunal is fundamental to due process, the mere assertion of a personal bias on the part of an administrative officer is insufficient, standing alone, to disqualify him from participation: N.L.R.B. v. Federal Dairy Company, 297 F. 2d 487 (1st Cir. 1962). Here, appellant did not introduce sufficient evidence to show that Mrs. Stanley had prejudged the case. The school board, therefore, was within its legitimate powers when it allowed her to remain and participate in the decision.

## VI. EQUAL PROTECTION

Appellant next contends that the penalty levied against him for violating the Ellwood City School policy against drinking deprives him of the equal protection of the laws: U.S. Constitution, amend. XIV, sec. 1. Under the suspension approved by the school board, appellant is barred from participating in all extracurricular activities, to include intramural sports, for a period of one semester (90 school days). At the school board hearing, the Superintendent of Schools for the Ellwood City School District, Mr. John J. DeCaro, admitted that other students have likewise been suspended who did not

participate in extracurricular activities. Appellant contends that the penalty against them was in fact no penalty at all. Since appellant does participate in extracurricular activities, and since this suspension will constitute a punishment against him, appellant contends this deprives him of the equal protection of the laws since others similarly situated are not in fact punished.

Counsel for the school board analogizes this case to Frantz v. Stroud Union School District Board of School Directors, 41 D. & C. 2d 211 (1964). In the Frantz case, the Common Pleas Court of Monroe County upheld a regulation prohibiting married students from participating in inter-scholastic athletics. In recent years, however, similar regulations have been struck down on Federal constitutional grounds: Hollon v. Mathis Independent School District, 358 F. Supp. 1269 (S.D. Tex. 1973), vacated on other grounds 491 F. 2d 92 (5th Cir. 1974); Romans v. Crenshaw, 354 F. Supp. 868 (S.D. Tex. 1972); Holt v. Shelton, 341 F. Supp. 821 (M.D. Tenn. 1972); Davis v. Meek, 344 F. Supp. 298 (N.D. Ohio 1972); Moran v. School District #7, Yellowstone County, 350 F. Supp. 1180 (D. Mont. 1972). We need not rest our decision on such dubious grounds.

We recognize the problem the school board faces in this regard. On the one hand, there is a need to discipline students who do not conform with legitimate school regulations. On the other hand, there is a desire not to interfere with the students' academic endeavors if at all possible. Were this court to interpret this policy of the Ellwood City School Board as a violation of the equal protection clause, we would deprive the board of the flexibility needed to carry out legitimate scholastic policies.

Indeed, if we were to require a school board to suspend a student who did not participate in extra-curricular activities from attending classes, this in itself would raise serious equal protection questions. The courts have repeatedly held that the equal protection clause does not operate as a constitutional straitjacket to prevent legitimate state policies from being carried out: Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491, reh. denied 398 U.S. 914, 90 S. Ct. 1684, 26 L. Ed. 2d 80 (1970); Frantz v. Baldwin-Whitehall School District, 8 Pa. Commonwealth Ct. 639, 304 A. 2d 531 (1973); Bohus v. Board of Election Commissioners, 447 F. 2d 821 (7th Cir. 1971); Connecticut Union of Welfare Employees v. White, 55 F.R.D. 481 (D.C. Conn. 1972). Inequity of treatment in the enforcement of governmental policies is inevitable to some degree. Not every minor difference in treatment rises to the level of a denial of equal protection of the laws: Bohus v. Board of Election Commissioners, supra.

## VII. VAGUENESS

Finally, appellant contends that the Ellwood City school policy which punishes students who are under the influence of alcoholic beverages or who have "obviously partaken thereof" is unconstitutionally vague. It is fundamental to due process that a statute or regulation must not be so vague as to require persons of ordinary intelligence to guess at its meaning or its possible application: Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). However, the constitution does not require impossible standards. All that is required is that the language convey a sufficiently definite warning as to the proscribed conduct when

measured by common understanding and practice: Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957). We are satisfied that the Ellwood City School District's policy satisfies the constitutional touchstone in this regard.

The policy was enacted in response to the problem of student drinking. We are satisfied that the punishment of a student who has "obviously partaken" of alcoholic beverages is sufficiently definite to give a person of normal intelligence sufficient warning of the prohibited conduct. To require an unreasonable degree of explicitness in every statute or regulation would require a degree of precision of which our language is not capable. See Parker v. Levy, 417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974).

(It should be noted for the record that the suspension proceedings in this case were initiated prior to the adoption of Title 22, Chapter 12, Students Rights and Responsibilities, first proposed in 4 Pa. B. 1049 (May 25, 1974). Chapter 12, as revised, was adopted in 4 Pa. B. 2075 (September 28, 1974). Under Chapter 12, it does not appear that the school board has the authority to suspend a student only from participating in extracurricular activities. Under Chapter 12, any prohibition from attending school for over ten days is an expulsion.)

ORDER OF COURT

Now, February 5, 1975, it is ordered, adjudged and decreed that the appeal on behalf of Dominick Delisio is hereby refused and the determination of this case made by the Ellwood City Area School District is hereby affirmed by the court.