No. 85-540

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA, ex rel., BOB
BARTMESS, PAT BARTMESS, MARY K.
BARTSCH, JULIE CLONINGER, NITA
CREACH, GARY A HULL, ED KIBLER,
DIANA KIBLER, et al.,

        Relators and Appellants,

    -vs-

BOARD OF TRUSTEES OF SCHOOL DISTRICT
NO. 1 and HIGH SCHOOL DISTRICT NO. 1,
LEWIS & CLARK COUNTY, et al,

        Respondents and Respondents.

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert T. Cummins argued, Helena, Montana
        Randy K. Dix argued, Helena, Montana

    For Respondent:

        Smith Law Firm; Chadwick H. Smith argued for School
        Dist. No. 1 & Bd. of Trustees, Helena, Montana

    For Amicus Curiae:

        Goetz, Madden & Dunn; James H. Goetz for Helena
        School Dist. No. 1, et al., Bozeman, Montana
        Leaphart Law Firm for Board of Public Education,
        Helena, Montana
        Charles Erdmann for Mont. School Board Assoc.,
        Helena, Montana
        Gough, Shanahan, Johnson & Waterman; Ronald Waterman
        argued for Montana High School Assoc., Helena, Montana

            Submitted:  August 25, 1986

             Decided:  September 18, 1986

Filed:  SEP 18 1986

_Ethel M. Harrison_

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal of a summary judgment of the District Court for Lewis and Clark County which upheld the requirement that Helena high school students participating in extracurricular activities maintain a 2.0 grade average. We affirm.

Relators appeal and raise the following issue: Did the District Court err as a matter of law in holding that under the United States and Montana Constitutions participation in existing extracurricular activities is not a fundamental right?

Relators are citizens and taxpayers of Lewis and Clark County and parents of students enrolled in the two Helena high schools. They object to the rule adopted by respondents requiring a student to maintain a 2.0, or "C", grade average for the preceding nine weeks in order to participate in extracurricular activities in the following nine week grading period. Extracurricular activities are those which do not earn credit toward graduation, including athletics, band, choir, speech, drama, cheerleading, drill team, student council, and holding class office. The 2.0 rule does not apply to special education students or students with learning disabilities.

The Helena high schools are members of the Montana High School Association (MHSA). The MHSA requires a 1.0, or "D", grade average for participation in extracurricular activities. Its regulations permit member schools to adopt more stringent policies. The National Collegiate Athletic Association (NCAA) requires a minimum grade point average of 2.0 to participate at the college level in practice, regular season

competition and athletically related financial aid during the first academic year.

Respondents adopted the 2.0 rule as an incentive for students who desire to participate in extracurricular activities. The 2.0 rule is a higher standard than that needed for graduation from Helena high schools, which is a 1.0 grade average in required courses. Respondents admit the 2.0 policy is not based on any scientific or statistical studies showing academic improvement by students following the adoption of such a policy.

Relators brought an action in District Court requesting injunctive relief and a declaratory judgment that the 2.0 rule was unconstitutional. The complaint alleged violation of the equal protection and equal educational opportunity clauses of the Montana Constitution. Following briefing and summary judgment motions by both parties, the District Court ruled in favor of respondents. The District Court found the 2.0 rule to be "a reasonable, fair, equitable and non-discriminatory policy, promulgated for the purpose of implementing the constitutional and statutory mandated educational goals of the school district. In its application, the requirement does not violate any constitutionally protected rights of these Relators, State or Federal. . ."

Amicus briefs were filed by several parties, some of whom addressed wider issues than the one now before us. We are not ruling upon the issue of whether or not the right to education itself is a fundamental right. We are not ruling upon whether the failure to offer any extracurricular activities may result in a constitutional deprivation, nor whether extracurricular activities are in any way an indispensable component of the basic system of free quality public

3

education. We are not in any way considering or ruling upon the question of funding education in Montana, including the funding of extracurricular activities, and are not considering any of the contentions being made that equal educational opportunity may require some specific types of funding. None of these issues is before us.

The issue appealed concerns the standard of review under which the 2.0 rule will be considered. Equal protection analysis traditionally involves one of two standards. A state action which burdens a fundamental right is subject to strict scrutiny and must be based upon a compelling state interest. An action which infringes upon a right which is not fundamental must only be rationally related to a legitimate government objective. A third middle-tier level of constitutional analysis has been recently recognized in Montana. See Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 43 St.Rep. 65.

The relators contend that the right to participate in extracurricular activities is fundamental and that the strict scrutiny standard therefore applies. The United States Supreme Court has held that education is not a fundamental right guaranteed by the federal Constitution. San Antonio School District v. Rodriguez (1973), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. Based on that holding, we conclude that participation in extracurricular activities is not a fundamental right under the U.S. Constitution. However, that does not preclude a finding that the right is fundamental under Montana's Constitution.

The relators cite Moran v. School District # 7, Yellowstone County (D.Mont. 1972), 350 F.Supp. 1180. In that case, Federal District Judge Murray said this Court had

4

recognized extracurricular activities as an "integral part of the total educational process." The court there overturned a school rule which denied a married high school student the right to participate in extracurricular activities. Since that case involved the right to marriage, there was a separate ground for heightened constitutional scrutiny. While we agree that extracurricular activities are part of the educational process, the case is not authority because of the marriage aspect.

The Moran decision was based on language in a case which relators also cited, McNair v. School Dist. No. 1 (1930), 87 Mont. 423, 428, 288 P. 188, 190:

> Under the heading "Education," our Constitution declares that "it shall be the duty of the legislative assembly of Montana to establish and maintain a general, uniform and thorough system of public, free, common schools." . . . [I]t is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship--the good citizen, the man or woman who is of the greatest value to the state, is the one whose every faculty is developed and alert.

That case arose out of a taxpayer's objection to the construction of a gymnasium and athletic field. This Court held the school board had been granted the authority to provide such facilities. The 'solemn mandate of the Constitution' discussed in McNair has been reworded in our 1972 Constitution, Art. X, § 1(3): "The legislature shall provide a basic system of free quality public elementary and secondary schools." The emphasis in McNair was that education should attempt to improve mental, physical, and moral powers.

This Court recently recognized that not all constitutionally important rights are fundamental rights. The holding in Butte Community Union was that a right to welfare,

which is lodged in our State Constitution, "is an interest whose abridgement requires something more than a rational relationship to a governmental objective." However, we concluded that the right to welfare was not a fundamental right, and stated:

> In order to be fundamental, a right must be found within Montana's Declaration of Rights or be a right "without which other constitutionally guaranteed rights would have little meaning." In the Matter of C.H. (Mont. 1984), 683 P.2d 931, 940, 41 St.Rep. 997, 1007.

Butte Community Union, 712 P.2d at 1311. The right to welfare was not found within Montana's Declaration of Rights nor did we conclude it was a right without which other constitutionally guaranteed rights would have little meaning.

Participation in extracurricular educational activities is not found within Montana's Declaration of Rights. The second portion of the test, whether the right is one without which other constitutionally guaranteed rights would have little meaning, is more difficult and we conclude, is best addressed by an analysis of Montana's constitutional provisions as to education.

The McNair case demonstrates that physical and moral development are important aspects of education. The state has an important interest in seeing that its young citizens receive a basic quality education under Art. X, § 1, Mont. Const. (1972): "It is the goal of the people to establish a system of education which will develop the full educational potential of each person." The provisions of Art. X demonstrate that there are constitutional rights and obligations which extend to all sides of the question of education. There is the right to equality of educational opportunity guaranteed to each person. There is the goal to establish a

6

system of education which will develop the full educational potential of each person. There is a requirement that the State's educational goals recognize and preserve the cultural heritage of American Indians. The legislature is obligated to provide a basic system of free quality education. The state board of education is responsible for long-range planning, coordination and evaluation of the systems with regard to such rights and obligations. The school trustees are vested with the authority to discharge these obligations and protect the rights.

Our review of the educational provisions of the Montana Constitution demonstrates the extreme importance attached to the various elements of education by the people of Montana in adopting the Constitution. This review suggests that the various aspects of education under our Montana Constitution could be classed as "fundamental" because of the critical importance of developing the full educational potential of each citizen. However, we are required to analyze the educational aspect of extracurricular activities from an equal protection standpoint. Gerald Gunther, in his law review article entitled The Supreme Court 1971 Term - Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972), points out that where a statute impinges on a right which is classed as fundamental, strict scrutiny of that statute is required and the result is invariably fatal to the statute. Justice Marshall commented on the fatal nature of strict scrutiny analysis in his dissenting opinion in Massachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307, 318, 96 S.Ct. 2562, 2569, 49 L.Ed.2d 520, 528:

> Although the Court outwardly adheres to the
> two-tier model, it has apparently lost interest in
> recognizing further "fundamental" rights and "sus-
> pect" classes. . . In my view, this result is the
> natural consequence of the limitations of the
> Court's traditional equal protection analysis. If
> a statute invades a "fundamental" right or discrim-
> inates against a "suspect" class, it is subject to
> strict scrutiny. If a statute is subject to strict
> scrutiny, the statute always, or nearly
> always . . . is struck down. Quite obviously, the
> only critical decision is whether strict scrutiny
> should be invoked at all. It should be no sur-
> prise, then, that the Court is hesitant to expand
> the number of categories of rights and classes
> subject to strict scrutiny, when each expansion
> involves the invalidation of virtually every clas-
> sification bearing upon a newly covered category.

In a similar manner, we pointed out that the strict scrutiny test requires the State to show a compelling state interest and is seldom satisfied. Butte Community Union, 712 P.2d at 1312.

Our analysis of the educational provisions of our Montana Constitution demonstrates there are competing and in some cases contradictory viewpoints which must be considered in determining whether the educational aspects of extracurricular activities are a right under our Constitution. We conclude that the only standard of constitutional review which allows a careful balancing of these competing interests is middle-tier analysis. We therefore hold that the middle-tier constitutional analysis is to be applied in determining whether the 2.0 rule violates students' right to participate in existing extracurricular activities. We further hold that this right is not a fundamental right under the Montana Constitution; but that such right is clearly subject to constitutional protection and that a middle-tier analysis is to be applied for constitutional equal protection purposes.

8

The standard of review used under Montana's middle-tier constitutional analysis is a "balancing of the rights infringed and the governmental interest to be served by such infringement." Butte Community Union, 712 P.2d at 1314. As in Butte Community Union, our first inquiry is whether the classification is reasonable. Specifically, is the classification of students eligible to participate in extracurricular activities on the basis of a 2.0 rule reasonable? Then we must examine whether the government interest in making this classification based upon academic grades is more important than the students' interest in participating in existing extracurricular activities. In other words, the school district must demonstrate that its classification is substantially related to an important governmental objective.

The action of the trustees places attaining minimum grades in academic subjects above participating in non-academic or extracurricular activities for which no graduation credits are given. The 2.0 rule does not apply to special education students or students with learning disabilities. While it is not based on studies showing improved grades for students operating under such a rule, it cannot be denied that the rule is an incentive for those students who wish to participate in extracurricular activities. It also promotes adequate time to study for those students who have not maintained a 2.0 grade average. We conclude that the classification is a reasonable one.

The priority given to academic over non-academic work to the extent found here does not contradict this Court's statement in McNair that physical and moral education are also important. We are not able to conclude, as the relators urge, that an opportunity to participate in extracurricular

9

activities is more important than the achievement of average academic performance. We conclude that the government interests in developing the full educational potential of each person and providing a basic system of quality public education by the enactment of the 2.0 rule outweigh the students' interest in participating in existing extracurricular activities.

We hold that the District Court did not err in holding that participation in existing extracurricular activities is not a fundamental right. We further hold that the 2.0 rule does not violate the Constitution of the State of Montana.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10

Mr. Justice Frank B. Morrison, Jr. specially concurs as follows:

I concur in the result but the majority Opinion is not entirely clear on a central issue.

First we must decide whether education is a fundamental right. The United States Supreme Court has held that education is not a fundamental right guaranteed by the federal Constitution. San Antonio School District v. Rodriquez (1972), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. In Rodriquez, it was argued that education is fundamental because it is essential to the effective exercise of First Amendment freedoms and the right to vote. The Court disagreed, stating "[W]e have never presumed to possess either the ability or the authority to guarantee to the citizenry the most effective speech or the most informed electoral choice." 411 U.S. at 36, 93 S.Ct. at 1298, 36 L.Ed.2d at 45.

In the recent case of Plyler v. Doe (1981), 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786, the Supreme Court reaffirmed its holding in Rodriquez that education is not a fundamental right guaranteed by the federal Constitution. Despite its holding, the Court placed great emphasis on the importance of education:

> But neither is it merely some governmental "benefit" indistinguishable from other forms of social welfare legislation. Both the importance of education in maintaining our basic institutions, and the lasting impact of its deprivation on the life of the child, mark the distinction. The "American people have always regarded education and [the] acquisition of knowledge as matters of supreme importance." Meyer v. Nebraska, 262 U.S. 390, 400 (1923).

Plyler, 457 U.S. at 221, 102 S.Ct. at 2397, 72 L.Ed.2d at 801.

This Court is not bound by the decisions of the United States Supreme Court where independent state grounds exist for developing expanded rights under our state Constitution. Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 43 St.Rep. 65; Pfost v. State (Mont. 1985), 713 P.2d 495, 42 St.Rep. 1957.

In Butte Community Union, supra, we said, "In order to be fundamental, a right must be found within Montana's Declaration of Rights or be a right without which other constitutionally guaranteed rights would have little meaning." 712 P.2d at 1311, 43 St.Rep. at 68; citing In the Matter of C.H. (Mont. 1984), 683 P.2d 931, 940, 41 St.Rep. 997, 1007.

The right to education is not enumerated in Montana's Declaration of Rights but is found in Art. X, § 1, Mont.Const. (1972). This section provides in part: "It is the goal of the people to establish a system of education which will develop the full educational potential of each person," and further directs the legislature to "provide a basic system of free quality public elementary and secondary schools."

The official committee comment to Art. X, § 1, opens with a statement stressing the importance of education in Montana:

> Education occupies a place of cardinal importance in the public realm. The educational system is charged with the task of shaping and cultivating the mind of each succeeding generation and with developing the capacities for cultural and technical advancement of society.

For many, denial of a basic education would result in either illiteracy or severely retarded growth. Such individuals would be restricted from exercising, in a meaningful way, fundamental rights guaranteed in the

Declaration of Rights such as the right to vote, right of participation, and right to know. Education is essential to even the most elemental exercise of many rights guaranteed by the Montana Constitution.

Education cannot be characterized as merely a benefit as was welfare in Butte Community Union , supra. The right to an education is not restricted in any manner. One need not qualify. Education is for all. Pursuant to Art. X, § 1, the legislature must provide a basic system of public schools, and each person is guaranteed equality of educational opportunity. In view of this constitutional mandate and the fact that education is essential to the exercise of other constitutionally guaranteed rights, we should clearly hold that basic education is a fundamental right under the Montana Constitution.

Next, we should address relators' contention that participation in extracurricular activities is a fundamental right which may be infringed only upon a showing of a compelling state interest. Relators cite Moran v. School District No. 7 (D.Mont. 1972), 350 F.Supp. 1180, in which the federal district court found that the right to attend school includes the right to participate in extracurricular activities. In Moran, the court found the school board's rule prohibiting married students from participating in extracurricular activities did not meet even a rational basis test. The court cited language from this Court's decision in McNair v. School District No. 1 (1930), 87 Mont. 423, 288 P. 188:

> [I]t is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship--the good citizen, the man or woman who is of the greatest

13

value to the state, is the one whose every faculty
is developed and alert.

Education may be particularly directed to either
mental, moral or physical powers or faculties, but
in its broadest and best sense it embraces them
all.

87 Mont. at 428, 288 P. at 190.

Apparently we have not retreated from the position announced in McNair, although the majority analysis is somewhat murky. That case arose as a challenge by a taxpayer objecting to the construction of a gymnasium and athletic field. There this Court held the school board had been granted the authority to provide such facilities. The emphasis in McNair was that education should attempt to improve mental, physical, and moral powers. That rationale still holds force today, but I find the Helena high schools' 2.0 rule is an attempt to guarantee a sound education.

Regardless of whether the extracurricular activity is academic or non-academic, the state has a compelling interest in seeing that its young citizens receive a basic quality education. While the 2.0 rule is not based on studies showing improved grades by students operating under such a rule, there can be no denying it is sound incentive for those students who desire to engage in extracurricular activities. Further, it assures adequate time to study for those students affected by the rule.

Montana's strong commitment to providing a quality system of education is clear under our Constitution. The state's compelling interest in educating its citizens is reflected in Art. X, § 1, Mont.Const. (1972): "It is the goal of the people to establish a system of education which will develop the full educational potential of each person." Respondents' 2.0 rule is a policy designed to achieve this constitutional directive.

14

The supervision and control of the public schools in each district is vested in a board of trustees pursuant to Art. X, § 8. The trustees' action does not deny educational opportunity, whether academic or nonacademic, to any students. Rather it seeks to create priorities within the curriculum to the end that students will receive the best education possible.

Relators contend the 2.0 rule violates the guarantee of equal educational opportunity found in Art. X, § 1, Mont. Const. (1972). The committee comments to Art. X, § 1, reflect a concern that Montana's educational financing system provide equal educational opportunity.

> The subject of "equal educational opportunity" has become a particularly important doctrine in modern education. Recent federal, district and state court decisions have interpreted the Fourteenth Amendment to the federal Constitution as applying to educational financing. Under this doctrine, the state must show a compelling interest to maintain a classification system by wealth which interferes with the individual's fundamental right to an education.

To satisfy the burden of proving the denial of equal educational opportunity, relators would first have to show that affected students are incapable of maintaining a 2.0 grade average and are thereby banned in fact from activity participation. Learning disabled and special education students are exempted from the rule. Relators have not shown that they are unable to meet the requirement. With the exemption noted for special education youngsters, all students are given the same opportunity.

I would hold that respondents' 2.0 rule is a constitutionally sound method of furthering the state's compelling interest in educating its citizens.

Justice

15

Mr. Justice John C. Sheehy, dissenting:

The issue in this case is the validity of the academic eligibility requirement for participation in extracurricular activities in High School District No. 1, Lewis and Clark County, Montana, as follows:

> Academic Eligibility. To be eligible to participate in a Montana High School Association contest a student must have received a passing grade in at least twenty periods of prepared work per week or its equivalent during the last preceding semesters in which he/she was in attendance. If a student is assigned an "incomplete" in a subject, he/she has not received a passing grade in this subject. The record at the end of the semester is final and scholastic deficiencies may not be "made up" in any way.

> In addition, Helena School Dist. #1 High School activity participants (including Athletics, Band, Vocal, Speech, Drama, Cheerleaders, Drill Team, Student Council, Class and Organizational Officers), must have a 2.0 grade point average the previous semester. If not in conflict with Montana High School Association policy, a student will have two (2) weeks to make up an incomplete.

> Further, Helena School Dist. #1 High School activity participants must be present the entire day to compete or practice unless permission is granted through the Principal's office.

On July 22, 1985, the respondent Board of Trustees enacted the following amendment to the academic eligibility requirement:

> If the grades of a student who is participating in activities falls below a 2.0 grade point average for any nine week grading period the student will be ineligible to participate in activities during the next nine week grading period. The policy change will be retroactive to the 1984-85 spring quarter.

[NOTE: School Board grammar, not mine.]

Under the agreed statement of facts before this Court, 1) extracurricular activities mean activities which do not earn credit toward graduation; 2) a 2.0 grade point average is a "C" average; 3) the rule sets a high standard which is

16

required for graduation from Helena high schools--whereby in order to graduate, a student must obtain 21 credits by receiving a grade of "D" or better in 21 courses. Participation by Helena high school students in interscholastic activities in Montana, for Class AA schools (both Helena high schools are Class AA schools) is allowed under the rules of Montana High School Association for students who receive a passing grade "D" in at least 20 periods of prepared work per week. None of the other Class AA schools, 14 others, require more than a "D" passing grade for participation in interscholastic activities.

Colleges, on paper at least, have higher standards for intercollegiate competition. The National Collegiate Association rule requires a 2.0 grade point average for a student to be eligible for practice, participation in regular season competition, and financial aid.

The single issue in this case is the constitutional validity of the academic requirement rule for participation in extracurricular activities adopted by the Helena High School District.

Until today, this Court had followed the rule that a student's right to participate in extracurricular activities was constitutionally protected. To be sure, that was not the majority rule among the several states, but in Montana, we held unswervingly to that rule, based on our special constitutional provisions and the interpretation of this Court in McNair v. School Dist. No. 1 (1930), 87 Mont. 423, 288 P. 188.

In McNair, a Casacade County taxpayer attacked the validity of a bond issue proposed by School District No. 1 of that county "for the purpose of constructing an outdoor

17

gymnasium and athletic field in said district, furnishing and equipping the same." NcNair attacked the proposed bond issue on the grounds that the 1889 Constitution did not contemplate athletic fields, and that the statute which permitted the erection of gymnasiums did not include athletic fields. The 1889 Constitution provided that the duty of the legislature was to establish and maintain "a general, uniform and thorough system of public, free, common schools." In construing what a "thorough system" meant, this Court said:

> What, then, constitutes a "thorough" system of education in our public schools? By its voluntary act, the state has assumed the function of education primarily resting upon the parents, and by laws on compulsory education has decreed that the custody of children be yielded to the state during the major portion of their waking hours for five days of the week, and, usually, nine months in the year. In doing so, the state is not actuated by motives of philanthropy or charity, but for the good of the state, and, for what it expends on education, it expects substantial returns in good citizenship. With this fact in mind, it is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship--the good citizen, the man or woman who is of the greatest value to the state is the one whose every faculty is developed and alert.
>
> Education may be particularly directed to either mental, moral or physical powers or faculties, but in its broadest and best sense it embraces them all. (Emphasis added.)

87 Mont. at 428, 288 P. at 190.

Following McNair, we had the case of Perkins v. Trask, (1933), 95 Mont. 1, 23 P.2d 982. This was an action against the members of the School Board for the drowning death of a pupil in a swimming pool maintained by the School District of Powell County. The trustees of the School District were immune from suit if they were performing a governmental function, and it was the contention of the plaintiff that because the trustees had no authority to construct a swimming

18

pool, they were individually liable. In disposing of the argument that the trustees were not engaged in a governmental function, this Court said:

> Our Constitution imposes the duty upon the legislative assembly "to establish and maintain a general, uniform and thorough system of public, free, common schools." (Sec. 1, Art. XI.) This the legislature has done by the enactment of our school laws. The courses of study are prescribed by Section 1054, Revised Codes of 1921, with power in the boards of trustees "to determine what branches, if any, in addition to those required by law, shall be taught in any school in the district." [citing authority]. Also by Chapter 147, Laws 1927, the trustees are given authority to issue bonds for the purpose of constructing or acquiring a gymnasium and for furnishing and equipping the same. (Sec. 1) Under the broad rules announced in McNair v. School District, 87 Mont. 423, 288 P. 188, 69 A.L.R. 866, the trustees have authority to construct and maintain a swimming pool for the use of the pupils.
>
> . . .
>
> It is also contended that, if the board has the right to maintain a swimming pool, its right is optional and not mandatory, and hence the rule of immunity does not apply. This fact does not alter the legal principle applicable. (citing authority).

95 Mont. at 7-8, 23 P.2d at 984.

Thus did our Court hold that a swimming pool in a school was a performance of an educational duty by the school trustees.

In Flathead Lake Methodist Camp v. Webb (1965), 144 Mont. 565, 399 P.2d 90, the question was whether the Methodist Church was entitled to a Montana property tax exemption for the maintenance of a summer camp on Flathead Lake in Lake County. The tract involved and consisted of 22 acres on which the Methodist congregations had erected cottages, dormitories, dining rooms, bathing facilities, garages, boat dock, water supplies, etc. Webb maintained that the church was not entitled to a tax exemption for the

19

property which was used for educational purposes. This Court said:

> Our review of the record leads us to the conclusion that the "exclusive" use of the premises is for "educational purposes" within the meaning of the statute. The term "educational purposes" is not, by the weight of authority, defined in terms of the common scholastic institutions of grammar school, high school, and university or college. (Citing authority.) Organizations for the social, intellectual, physical, or religious welfare of children are exempt equally. The end of education may be to develop either the mental, physical, or moral qualities. (Citing authority.) Religious education is exempt as an "educational purpose"
>
> . . .
>
> Our court has stated: "Education may be particularly directed to either mental, moral, or physical powers or faculities, but it is broadest and best sense it embraces them all." McNair v. School Dist. No. 1 of Cascade County, 87 Mont. 423, [428,] 288 P.2d 188, 190, 69 A.L.R. 866. (Emphasis added.)

144 Mont. at 569, 570, 399 P.2d at 93.

Then came Granger v. Cascade County School Dist. (1972), 159 Mont. 516, 499 P.2d 780. In that case Cascade County School District had imposed fees in the grade school and high school for such items as workbooks, chemistry notebooks, manual arts materials, musical instrument rentals, summer school, and others. The fees were attacked by the plaintiffs on the grounds that the constitutional requirement of a "thorough system" of public, free schools encompass all categories of activities in the school and no such fees can be imposed. There this Court reaffirmed its statement that education may be directed to mental, moral and physical powers, and provided this test:

> Is a given course or activity reasonably related to a recognized academic and educational goal of the particular school system? If it is, it constitutes part of the free, public school system commanded by Art. XI, Sec. 1 of the Montana Constitution and additional fees or charges cannot be levied, directly or indirectly, against the student or his

20

parents. If it is not, reasonable fees or charges may be imposed.

159 Mont. at 516, 527, 499 P.2d at 706.

In addition, the federal district court in Montana construed our holding in McNair and its following cases as granting a constitutionally protected right to participate in extracurricular activities. In Moran v. School Dist. No. 7, Yellowstone County (D. Mont. 1972), 350 F.Supp. 1180, the federal court, recognizing the holding in McNair, stated:

> In relying on this case the present Montana Supreme Court has recognized the importance of extracurricular activities as an integral part of the total education process. Courts have begun to recognize that extracurricular activities such as football are "generally recognized as a fundamental ingredient in the educational process." Kelly v. Metropolitan County Board of Education of Nashville, etc., 293 F.Supp. 485, 493 (D.C. 1968). See also Lee v. Macon County Board of Education, 283 F.Supp. 194 (D.C. 1968). Thus it is apparent that the right to attend school includes the right to participate in extracurricular activities. (Emphasis added.)

350 F.Supp. at 1184.

In brief and in oral argument, the School Board concedes that extracurricular activities are "a fundamental ingredient of the educational process," but, without further explanation contends that the "fundamental ingredient" is not constitutionally protected. Some may distinguish a fundamental ingredient from a fundamental right, but it takes a quantum jump.

Thus, it was the law in this state until today that participation in extracurricular activities was a fundamental ingredient of the educational process; that school boards which issue bonds or otherwise finance through taxpayers the erection of athletic fields and gymnasiums or other provisions for extracurricular activities do so as part of the educational process; and that fees cannot be charged by

21

the School Board if a given course or activity is reasonably related to recognized academic or educational goal. That was the state of the law when the constitutional framers in 1972 in the new constitution adopted Art. X, § 1, which provides:

> (1) It is the goal of the people to establish a system of education which will develop the full educational potential of each person. Equality of educational opportunity is guaranteed to each person of the state.

We have been shown no record from the 1972 Constitutional Convention that would indicate that the constitutional framers wanted to divert extracurricular activities in schools from the other educational goals. Indeed, the language used by the constitutional framers in 1972 seems to encompass physical development in the term "educational potential." For this must be true, if nothing else is, that the end of our educational system must be to develop students physically, mentally and morally to meet the challenges of life.

Of the approximately 2,500 students attending both Helena high schools, more than 500 of them, with the approval of this Court, are ousted by the eligibility rule from any extracurricular activities. If these students found little to relish in classrooms heretofore, their tedium will never be relieved by the sweet mix of association with their peers in other school endeavors, now branded as "nonessential"--drama, debate, cheerleading, drill team, student government, class and/or organizational officers, and yes, interscholastic track, football, basketball and golf. It is now possible for a student to graduate from either of Helena's high school without ever being eligible for any extracurricular activity!

We have never had before us a scheme of government so patently discriminatory. This Court has followed convoluted equal protection analyses ad absurdum to a silly result. Now a Helena High School girl with a 1.98 grade average and a good soprano voice is excluded from singing with the Helena Starlighters. A Gary Cooper or a Myrna Loy, both Helena products, may now be excluded from the Helena drama classes. A student can sign up for Spanish, but that student cannot belong to the Spanish Club, even with a passing grade in Spanish, if his or her overall average is less than "C." In any test of fair dealing, those results should instantly be held irrational, but this Court does not want to apply rationality standards. It wants to talk about strict scrutiny and middle term reviews to deny these students perhaps the only time in their lives to use their God-given skills to run in track, to twirl batons, to play in bands.

We should not resort to high-flown concepts of equal protection law, which are with us today and tomorrow are gone with the wind, to deny constitutional protection to these affected students. Even if we reverse this Court in its prior decisions by holding that no fundamental right is involved, or by holding that we do not have an inherently suspect class, equal protection still requires that the rule be rationally related to a legitimate state interest. Sullivan v. University Interscholastic League (Tex. 1981), 616 S.W.2d. 170.

The only stated purpose for the rule set out in the agreed statement of facts is that the rule is "to encourage higher academic achievement to students who wish to participate in extracurricular activities." A rule which places physical, educational and moral development below

23

mental education slaps at the three legs upon which the educational stool is built.

This rule is not rationally related to its object for two reasons: it is guilty of bad breadth, and it is not rationally related to its intended purpose.

When I say bad breadth, I mean that this rule is so overbroad that it must eventually be modified by the School District trustees, and indeed it has already been modified once. Its intended purpose, to encourage greater academic achievement, is not supported by any evidence in the agreed statement of facts or otherwise. It is built more on wish than fact. No rational relationship has been shown.

It is noteworthy that the exclusion of high school students from extracurricular activities is so drastic that it is one of the punishments allowed to trustees for students who show open defiance of authority, deface school buildings or threaten other persons. Section 20-5-201, MCA. Thus has the School Board placed students who earn a grade point average of less than 2.0 in the category of the rebellious and defiant. It is patently irrational.

_John C. Shelhy_
Justice

Mr. Justice William H. Hunt, Sr:

I concur in the dissent of Justice Sheehy.

_William E. Hunt Sr._
Justice

24