The **BLACK COALITION, an unincorporated association, et al., Plaintiffs-Appellants and Cross-Appellees,**

v.

**PORTLAND SCHOOL DISTRICT NO. 1 et al., Defendants-Appellees and Cross-Appellants.**

Nos. 71–2503, 71–2493.

United States Court of Appeals, Ninth Circuit.

Sept. 25, 1973.

Glen H. Downs (argued), Legal Aid Service, L. A. Aschenbrenner (argued), Charles J. Merten, John H. Clough, of Marmaduke, Aschenbrenner, Merten & Saltveit, Jay Folberg, Joseph Morehead of Legal Aid Service, Portland, Or., for appellants.

Clifford N. Carlsen, Jr. (argued), William Stiles, Martin B. Vidgoff of Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for appellees.

Before DUNIWAY, ELY and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this class action for a declaratory judgment in favor of the class and injunctive relief in favor of three named plaintiffs, the district court was asked to rule that certain disciplinary procedures of the Portland, Oregon School District No. 1 were constitutionally infirm. The court held that the procedures for effecting an expulsion were unconstitutional in part, but that in all other respects the procedures complied with due process requirements. The court denied equitable relief to the three individual plaintiffs. All parties appealed to this court. We affirm the judgment of the district court in all respects.

## I. FACTS

The deputy superintendent of schools for Portland School District No. 1 announced "Disciplinary Procedures" in December 1969. These rules contained the following components:

(a) An explanation of the procedure for suspending a student;

(b) An explanation of the procedure for expulsion of a student; and

(c) An explanation of the substantive grounds for disciplinary action.

At issue in the present lawsuit is the constitutionality of these "Disciplinary Procedures,[22] as applied in each of the following cases.

1. *Gerald Brown.* As the result of an alleged assault on a fellow student on January 6, 1970, Gerald Brown was suspended from Roosevelt High School on January 19, and his parents were notified thereof by letter on the same day. The parents were told that Gerald was suspended "pending an investigation for a possible recommendation to the Principal, [defendant Arthur] Westcott, for

an expulsion from school." The January 6 assault was given as the reason for the investigation. The letter did not give the name of the alleged assault victim but Gerald and his parents testified that they knew the basis for the charge. In accordance with the District's procedures no hearing was held prior to Gerald's suspension.

Somewhat contemporaneously, a petition was filed in the Juvenile Division of the Multnomah County Circuit Court, alleging the delinquency of Gerald Brown. The high school vice-principal recommended to Principal Westcott that Gerald remain suspended pending the outcome of the Juvenile Court hearing. When it was learned that the hearing was not scheduled until late in February, the school administration determined that Gerald should be readmitted to school, which was done on February 2.

No further disciplinary action was taken against Gerald but the Juvenile Court found him guilty of the assault and reprimanded him. In that proceeding Gerald and three others had stated that he acted in self-defense.

2. *Rita Brown.* Gerald's sister, Rita Brown, was suspended from Roosevelt High from January 23 to February 3, 1970, pending a hearing on another Juvenile Court complaint. Her parents were promptly informed of the suspension and the reason therefor and she, too, was allowed to return to school on February 3 because of the delay encountered in Juvenile Court. No hearing was held either before or after her suspension.

The petition filed against her in Juvenile Court alleged an assault on two other girls, both Caucasians. She was found guilty on one charge and was reprimanded. No further disciplinary action was taken against her by the school authorities.

3. *Edward Lockridge.* Edward Lockridge was suspended without a hearing from Grant High School on January 26, 1970 for disruptive influence in class and an assault on another student on that day. The vice-principal of Grant made an investigation to determine whether Lockridge should be expelled. In part because of his long history of assaultive and disruptive behavior, expulsion was recommended and Lockridge's mother was so informed on February 3.

Lockridge's mother asked for a conference with the principal of Grant as provided in the Disciplinary Procedures. She also asked that she and her son be allowed to bring counsel to the conference, to confront and cross-examine complaining witnesses and to introduce evidence on Lockridge's behalf. In accordance with the District's rules, these special requests were denied and, on February 11, 1970, this action was filed.

■ The conference, scheduled for February 13, was postponed pending a disposition of Lockridge's motion for a temporary restraining order which was heard and denied on February 25, 1970. When the conference with the principal was rescheduled for March 6, neither young Lockridge nor his parents appeared. The principal then informed him and his mother by letter that the boy had been expelled for the remainder of the school year. A further conference with the Area Superintendent of Schools was not requested. In his deposition, Lockridge admitted the assault on the other student on January 26.[1]

## II.  STANDING

■ Plaintiffs have attempted to mount an attack on the entire disciplinary framework, whether or not applicable to their cases. It is obvious that they have no standing to make such a broad brushed assault. Communist Par-

---

[1]. During the trial of the case the plaintiffs called to the attention of the court the situation of a fourth person, Colin Thompson. Thompson was not made a party plaintiff in accordance with Rules 15, 21, Fed.R.Civ.P.

Therefore plaintiffs are in no position to contend that issues which Thompson might have had standing to raise as a representative plaintiff are properly before the court. *See* Rule 23, Fed.R.Civ.P.

ty v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L. Ed.2d 625 (1961). As the Supreme Court said in the *Communist Party* case:

"[T]he role of the judiciary in a government premised upon a separation of powers . . . precludes interference by courts with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely." 367 U.S. at 72, 81 S.Ct. at 1397.

Gerald and Rita Brown were suspended for relatively short periods pending disposition of their cases in Juvenile Court. These suspensions were effected without a prior hearing and their permanent school records now indicate that they were suspended for alleged assaults on other students. Each has standing to litigate the constitutionality of that part of the disciplinary procedures which permits suspension without a prior hearing, and each is representative of a class which was suspended in a similar manner. Each may also properly raise the contention that the disciplinary procedures are unconstitutionally vague *insofar as they provide that a student may be disciplined for assaulting another student.*

Edward Lockridge also has standing to object to his suspension without a prior hearing and his expulsion pursuant to regulations allegedly "void for vagueness."

Furthermore, he may assert on behalf of the class he represents the contention, accepted by the district court, that the expulsion procedures are unconstitutional for failure to permit the student to confront and cross-examine adverse witnesses and to produce witnesses to testify on his own behalf. The existence of a defense to Lockridge's individual claim for relief has no effect on the court's obligation to consider and rule on those issues of law which *are* common to the claims of Lockridge and the other class members. Mersay v. First Republic Corp. of America, 43 F.R.D. 465, 469 (S.D.N.Y.1968); 3B Moore's Federal Practice ¶ 23.06–2, p. 23–326.

Plaintiffs do not, however, have standing to challenge on vagueness grounds those portions of the regulations and procedures pursuant to which no individual plaintiff was disciplined. Gesicki v. Oswald, 336 F.Supp. 371 (S. D.N.Y.1971). These individuals "cannot represent a class of whom they are not a part." Bailey v. Patterson, 369 U.S. 31, 32, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962).

■ Nor does the Black Coalition have standing to represent those students disciplined under other regulations. While the Black Coalition purports to include within its membership all Black students at Roosevelt High School including, undoubtedly, students disciplined under other portions of the regulations and procedures, an association has standing to represent its members in a class suit only if "there is a compelling need to grant [it] standing in order that the constitutional rights of persons not immediately before the court might be vindicated." Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968). There is no reason in the present case why such individuals as would be or have been prejudiced by any alleged unconstitutionality in the regulations and procedures could not come forward and assert their own claims in court. There being no compelling need to grant the Black Coalition standing, we decline to do so.

## III. THE COMMON ISSUES OF LAW

### A. TEMPORARY SUSPENSION WITHOUT A PRIOR HEARING

Without hearings, the student plaintiffs were suspended for periods ranging from six school days to six weeks. They contend that they could not constitutionally be suspended from classes without some type of hearing. *See* Pervis v. LaMarque Independent School District, 466 F.2d 1054 (5th Cir. 1972); Williams v. Dade County School Board, 441 F.2d 299 (5th Cir. 1971); *cf.* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See also* Stricklin

v. Regents of the University of Wisconsin, 297 F.Supp. 416 (W.D.Wis.1969).

█ The requirement of a prior hearing will depend primarily on the nature of the penalty imposed, the extent to which the underlying facts are in dispute, and the need for swift action to preserve order and discipline within the school. The courts have disallowed expulsions and long-term suspensions unaccompanied by hearings which comport with the standards of due process of law. *Pervis, supra; Williams, supra;* Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967); Woods v. Wright, 334 F.2d 369 (5th Cir. 1964); Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961). But brief suspensions without a hearing have been more readily tolerated. Linwood v. Board of Education of City of Peoria, 463 F.2d 763 (7th Cir. 1972); Dunn v. Tyler Independent School Dist., 460 F.2d 137 (5th Cir. 1972), and cases cited therein at 145.

█ Brief suspensions are often justified by the interest of school officials in maintaining an atmosphere conducive to learning. The injury caused to assaultive and disruptive students by brief suspensions is minimal compared to the danger posed to the normal functioning of an educational institution by the continued presence of such students. *Linwood, supra; Dunn, supra.*

█ Plaintiffs in the present case have taken the position that no student may be suspended *for any period of time* without a prior hearing. We reject that as a rule of law. Whether the suspensions handed out to Lockridge or the Brown children were of such duration that a due process hearing was required at some point is a question not before us, the parties having agreed to withdraw this problem of "line drawing" from the court's consideration. We therefore find no error in the district court's refusal to find that plaintiffs' constitutional rights were violated in this regard.

### B. VAGUENESS.

The plaintiffs challenge the disciplinary regulations as unconstitutionally vague. It is not clear to what extent the void for vagueness doctrine applies to school disciplinary regulations. *Compare* Soglin v. Kauffman, 418 F.2d 163, 167–168 (7th Cir. 1969) with Esteban v. Central Missouri State College, 415 F.2d 1077, 1087–1089 (8th Cir. 1969). *See also Linwood, supra.*

"[But] all [courts] seem to agree that the same specificity is not required in college rules as is necessary in criminal statutes." Sword v. Fox, 446 F.2d 1091, 1099 (4th Cir. 1971).

*See also* Whitfield v. Simpson, 312 F. Supp. 889, 898 (E.D.Ill.1970):

"[G]reater flexibility may be permissible in regulations governing high school students than college codes of conduct because of the different characteristics of the educational institutions, the differences in the range of activities subject to discipline, and the age of the students."

█ Under no view could the regulations as applied to these individual plaintiffs be regarded as too vague. Chapter 4, Section A, Paragraph 12 of the Regulations of Portland School District No. 1 provides:

"A pupil whose presence is seriously detrimental to the best interests of the school *may be suspended or expelled in accordance with administrative rules and procedures established by the Superintendent.*" (Emphasis supplied.)

Disciplinary Procedures in the Portland Public Schools, as promulgated in a bulletin from the office of the Superintendent, December 3, 1969, further provide:

"Abuses that most often . . . necessitate disciplinary action that may range from a conference with a teacher to an expulsion or exclusion are:

\* \* \* \* \* \*

"4. Assaults, . . . ."

The named plaintiffs were suspended for committing assaults on others. In no way can it be said that these regulations and procedures were so vague that the plaintiffs were unable to determine that their conduct made them subject to suspension or expulsion.

As we have noted previously, plaintiffs lack standing to challenge the remaining regulations and procedures on vagueness grounds.

## C. EXPULSION WITHOUT A DUE PROCESS HEARING

■ The district court held that the expulsion procedures were unconstitutional for failing to provide a hearing at which the student could be represented by counsel and, through counsel, present witnesses on his own behalf, and cross-examine adverse witnesses. Other courts have held that a hearing incorporating these safeguards must be held before or shortly after a child is expelled or suspended for a prolonged or indefinite period. Esteban v. Central Missouri State College, 277 F.Supp. 649 (W.D.Mo.1967). *See also* Goldberg v. Kelly, *supra,* and its companion, Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). *See, generally,* C. Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027 (1969); W. Seavey, Dismissal of Students: "Due Process," 70 Harv.L.Rev. 1406 (1957). We agree and therefore affirm the district court's holding that the expulsion procedures followed by defendant school board were unconstitutional.

## IV. INDIVIDUAL RELIEF

## A. THE BROWNS.

Because of our holding in Parts II A and II B of this opinion that the suspensions of the Brown children were constitutional, no question of individual relief from the impact of those suspensions is presented. However, a different issue is presented by the Browns' contention that their constitutional rights were violated because their permanent school records indicate that they were suspended in January 1970 for assaultive conduct, although the school district has held no hearings on either matter.

■ Even assuming that there is a right to an unblemished permanent school record, which can be denied only in accordance with due process, we do not see that the right was violated here. The records show that each of the Brown children was suspended in January 1970. This correctly recites the facts. Further, the record in each case is supported by the findings made by the Juvenile Court that assaults did take place. An educational institution is certainly entitled to rely on a factual determination made in a court of law.

## B. EDWARD LOCKRIDGE.

■ Although the district court found the expulsion procedures followed by defendants to be unconstitutional, it denied equitable relief to plaintiff Lockridge. We agree. It is undisputed that Lockridge had a long history of assaultive and disruptive behavior. Lockridge admitted the assault upon a student considerably smaller than himself on the day in question and admitted frequent encounters with the same student over the previous few years. In short, Lockridge admitted all of the essential facts which it is the purpose of a due process hearing to establish. There being no reason to order defendant to reopen Lockridge's case and hold a new hearing, the district court properly declined to do so.

## V. CONCLUSION

The judgment of the district court is in all respects affirmed.