Henry ALEX, by Floyd K. Alex
and Edith Alex

v.

E. J. ALLEN, Individually and in his official capacity as Assistant Principal of the Cranberry Senior High School, et al.

Civ. A. No. 75–56.

United States District Court,
W. D. Pennsylvania.

Feb. 17, 1976.

James E. Bukac, Franklin, Pa., for plaintiff.

John E. Egan, Franklin, Pa., for defendants.

## MEMORANDUM OPINION

KNOX, District Judge.

This cause of action arises from a thirty-day suspension of the plaintiff Henry Alex, from the Cranberry Area Senior High School in Venango County, Pennsylvania. This action was taken at a meeting of the Cranberry Area School District School Board on April 21, 1975. The complaint in this case was filed on May 15, 1975, and on June 30, 1975, a motion to dismiss the Cranberry School District, filed on June 6, 1975, was granted. Motions to dismiss all the other defendants, filed on August 22, 1975, August 28, 1975, and on November 17, 1975, remain pending before the court. Before proceeding to consider the plaintiff's constitutional claims, several issues relating to the jurisdiction of this court need to be considered.

### JURISDICTIONAL ISSUES

(A) *Class Action Certification.*

Rule 23(a)(1) of the Federal Rules of Civil Procedure lists four prerequisites to the maintenance of any class action:

"Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are

questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and(4) the representative parties will fairly and adequately protect the interests of the class."

A careful reading of the plaintiff's complaint reveals that the above requirements have not been met and certification of this case as a class action will be denied. The complaint states that:

"Plaintiff brings this suit as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. The suit is brought on Plaintiffs behalf and on behalf of all other students in the Cranberry Area Senior High School, similarly situated, who find their rights violated or in jeopardy because of the enforcement, and arbitrary and capricious application of the policies, practices and procedures of Defendants against Plaintiff and the Class for the purpose of suspension and expulsion from school. The persons in this class are so numerous that joinder of all members is impractical. There are questions of law or fact common to each of the classes, the claims of the representatives are typical of the claims of the class, and the representatives will fairly and adequately protect the interests of the class."

Yet the complaint also states that:

"It was established at the hearings that other students had engaged in activities similar to that charged against Plaintiff as grounds for expulsion of which Defendants DeRUBIES and ALLEN were aware in their official capacities, but that no other such student had been expelled or subject to expulsion procedure.

"It was established at the hearing that the last expulsion proceeding convened within the Cranberry Area School District was in excess of twenty years ago."

■■■ The plaintiff's expulsion or rather suspension was thus a unique experience at Cranberry High School—his

claims are individual and distinct from those of the rest of the class. Of course, since the court finds that the requirements of Rule 23(a) have not been established, it is not necessary to discuss the standards for the three types of class actions under Rule 23(b). The requirements of *both* subdivisions A and B of Rule 23 must be established before the court can certify a class. *Richardson v. Hamilton International Corporation*, 62 F.R.D. 413 (E.D.Pa.1974). See also the opinion of this court in *Stavrides v. Mellon Bank, et al.*, D. C., 69 F.R.D. 424, decided on November 25, 1975, in regard to the issues involved in the area of class action certification.

There is only one claim which the plaintiff might arguably share in common with the other students at Cranberry High School. This is the alleged chilling effect of the overly broad high school regulations. As will be subsequently discussed, these contentions do not contain constitutional merit. The requirements of typicality, numerosity, and commonality have not been met and the court will deny certification of the class under Rule 23(c)(1).

(B) *The 1985 Claim.*

■■■ Plaintiff's claim under 42 U.S.C. § 1985 must also be denied on jurisdictional grounds. In relevant part, the statute provides:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . in any case of conspiracy set forth in this section, if one or. more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occa-

sioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

The courts have held that the elements of a conspiracy must be specifically pleaded to sustain a 1985 claim. "Broad, conclusory allegations of conspiracy are insufficient to state a cause of action." *Weyandt v. Mason's Stores, Inc.*, 279 F.Supp. 283 (W.D.Pa.1968). In this case, there is not even a broad, conclusory allegation of conspiracy such as was deemed insufficient in Weyandt. See also Antieu, Chester J., Federal Civil Rights Act, Civil Practice (1971). ("Pleading the conspiracy customarily demands specific allegations." at p. 142, § 106). There is no allegation in this complaint of an agreement among the defendants to intentionally discriminate against the plaintiff which constitutes a conspiracy under 1985. See Antieu, supra, § 106 and cases cited therein. Further actions under 1985(3) must be based on some invidious racial or class discrimination. Nothing of this nature appears here. See *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

## II.  SUBSTANTIVE ISSUES

Dismissal of the class action and 1985 claims from plaintiff's complaint leaves the 42 U.S.C. § 1983 and declaratory judgment issues based thereon for substantive consideration. After outlining the constitutional standards by which to evaluate motions to dismiss, the plaintiff's constitutional claims will be discussed in light of the extensive litigation regarding the rights of students in recent years.

(A) *Legal Standards Governing Motions to Dismiss.*

The United States Supreme Court has articulated the standards by which to judge motions to dismiss as follows:

"For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. . . . And, the complaint is to be liberally construed in favor of plaintiff. . . . The complaint should not be dismissed unless it appears that appellant could 'prove no set of facts in support of his claim which would entitle him to relief.'" *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). (Citations omitted).

This circuit has expressed the rule in similar language:

"It is also well-settled that on a motion to dismiss the complaint must be viewed in the light most favorable to the plaintiff and that the complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim; further, no matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it."

*Melo-Sonics Corp. v. Cropp*, 342 F.2d 856 (3d Cir. 1965). The above language is quoted from the early case of *Continental Collieries v. Shober*, 130 F.2d 631 (3d Cir. 1942). The above tests can now be applied to the three categories of constitutional issues advanced by the plaintiff:

(1) Overbreadth and void for vagueness.

(2) Procedural due process.

(3) Equal protection.

(B) *The Void for Vagueness and Overbreadth Issue.*

The following counts of plaintiff's complaint deal with his constitutional argument that the disciplinary rules of the Cranberry High School are vague and overbroad:

"The Defendants actions were done pursuant to the alleged authorization of the Discipline Rules of the Defendant School Board.  See Exhibit B.

"The aforesaid discipline rules are written in such a vague manner that they do not adequately inform any individual such as Plaintiff or members of Plaintiff's class as to what in fact is the proscribed activities.

"The aforesaid discipline rules are so overbroad and fail to adequately define proscribed activities that they have a chilling effect on the exercise of constitutionally protected rights of the Plaintiff and of Plaintiff's class.

"The aforesaid Discipline Rules on their face are unconstitutional in that they cause Plaintiff and members of Plaintiff's class to be deprived of their liberty and property, under color of state law, usage or custom without due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution."

A consideration of these allegations in light of recent case law reveals that "the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim." See *Cropp*, supra. These allegations must therefore be dismissed from the plaintiff's complaint.

Two recent United States Supreme Court cases considered the constitutional requirements for specificity in criminal statutes. In *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), the court upheld the constitutionality of a court martial conviction for "conduct unbecoming an officer and a gentleman." And in *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975), the court upheld a Tennessee statute proscribing "crimes against nature".

The *Rose* case summarized the fundamental requirements of due process as follows:

"It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' . . . But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncer-tainties.' . . . Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. . . . All the Due Process Clause requires is that the law give sufficient warning that men may conform their conduct so as to avoid that which is forbidden." (Citations omitted.)

It is questionable if the disciplinary rules of Cranberry High School could pass constitutional muster under the above *Rose* standards. The relevant portions of these disciplinary rules are:

"It is impossible for teaching or learning to take place in a classroom unless good order is maintained.

"Students are reminded that they must adhere to a code of *good behavior* not only for their own benefit, but for the benefit of others as well.

"All teachers have been requested to be on the alert for any student behavior which is in violation of school regulations. Students should behave in a manner that will be a credit to themselves.

"Students are to refrain from the following:

1) Smoking in the building or on school grounds.

2) Fighting on or near school property.

3) Flagrant disrespect of teachers.

4) Extreme dress or appearance which is disruptive to class.

5) Destruction or defacing of school property.

6) Wearing hats in the building.

7) Eating or drinking outside the cafeteria.

8) Loitering in the areas of heavy traffic.

9) Carrying cigarettes in shirt pockets or any place where they are visible.

10) Rowdy behavior or running in the building.

11) Littering.

12) Locker misuse.

13) Hand holding and other displays of affection."

A number of these rules—3, 8, 10 and 13 for instance—may not give the type of clear warning of the areas of proscribed conduct required by criminal statutes.

The above disciplinary rules, however, need to be considered under a looser standard than the *Rose* test of criminal statutes. The Ninth Circuit recently summarized the cases dealing with the constitutionality of school regulations in the case of *Black Coalition v. Portland School District No. 1*, 484 F.2d 1040 (9th Cir. 1973):

"It is not clear to what extent the void for vagueness doctrine applies to school disciplinary regulations. Compare *Soglin v. Kauffman*, 418 F.2d 163, 167–168 (7th Cir. 1969) with *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1087–1089 (8th Cir. 1969). See also *Linwood [v. Bd. of Ed. of City of Peoria*, 463 F.2d 763 (7th Cir. 1972)], supra.

'[But] all [courts] seem to agree that the same specificity is not required in college rules as is necessary in criminal statutes.' *Sword v. Fox*, 446 F.2d 1091, 1099 (4th Cir. 1971)."

At least one subsequent case, *Marin v. University of Puerto Rico*, 377 F.Supp. 613 (D. Puerto Rico 1974) did hold college regulations to the same standards as criminal legislation. The court is disposed, however, to follow the line of cases referred to in *Black Coalition*, supra, rather than *Marin*, supra, for several reasons. First, the college regulations in *Marin* involved prior restraints of pickets, marches and meetings and thus more directly implicated First Amendment rights than the regulations challenged in this case.

A second factor militating in favor of the *Black Coalition* rather than the *Marin* test is that high school rather than college regulations have been challenged. The court in *Black Coalition* quoted the following proposition from an earlier case:

"[G]reater flexibility may be permissible in regulations governing high school students than college codes of conduct because of the different characteristics of the educational institutions, the differences in the range of activities subject to discipline, and the age of the students."

In addition, a looser standard of constitutional review of high school regulations is appropriate because of the greater flexibility possessed by the state to regulate the conduct of children as opposed to adults. In *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), the court held:

"Even where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults.' "

Finally, a recent case in this circuit, *Sill v. Pennsylvania State University*, 462 F.2d 463 (3d Cir. 1972) (Maris, J.), while not directly on point, favors the *Black Coalition* point of view. The *Sill* case arose from a series of student anti-war demonstrations at Penn State in 1970 in which the students had occupied several of the campus' administrative buildings and interfered with their operations. The court made the following ruling with respect to the university regulations under which the students were punished:

"The appellants say that the regulation fails to meet the standard of specificity in that the students were not provided with a reasonably clear and specific description of the misconduct which is to be subject to discipline. They argue that the district court was wrong in finding that the regulation provided an adequate guide to the student of what is expected and what is forbidden. We cannot agree. On the contrary, we think that it spells out quite clearly and in sufficient detail the conduct which is forbidden. For it specifically prohibits, inter alia, disruption 'by an individual or a group which unreasonably interferes with . . . the operation of its offices, classrooms,

laboratories, research facilities, and the right of access to these and any other physical accommodations used in the performance of the teaching, research, and administrative functions and related adjunct activities of the University."

■ As in *Sill*, the challenged regulations here spell out in sufficient detail the conduct which is forbidden. In *Gere v. Stanley*, 453 F.2d 205 (3d Cir. 1971), the court said the following about public school regulations:

"The primary goal of secondary schools is, of course, the education of students. To succeed in this function, it is sometimes necessary for school authorities formally to regulate student conduct. If a particular pattern of student conduct is disruptive of the educational process, a narrow rule circumscribing the behavior is not infirm under the Constitution or the common law when sufficiently justified."

Conduct such as "flagrant disregard of teachers", "loitering in areas of heavy traffic", and "rowdy behavior in the areas of heavy traffic" clearly disrupts the educational process. The Cranberry High School regulations are directed at the patterns of behavior which may legitimately be proscribed by public school authorities and in light of the minimal constitutional standards of specificity for high school regulations, the plaintiffs void for vagueness and overbreadth arguments will be dismissed.

(C) *Procedural Due Process.*

The second category of plaintiff's constitutional arguments deal with procedural due process. There has also been considerable litigation in this area in recent years. See *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). (An extensive annotation of these cases is contained in Footnote 8 on these pages.) The Supreme Court dealt with these issues in two cases decided in the last term.

In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), nine high school students were suspended from Co-

lumbus High School for a period of ten days. An Ohio statute permitted the principal of high schools to suspend students without giving them prior notice or a hearing.

The Supreme Court found that education is both a liberty and a property right protected by the Fourteenth Amendment:

"The authority possessed by the State to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause.

"The Due Process Clause also forbids arbitrary deprivations of liberty. 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the clause must be satisfied. . . It is apparent that the claimed right of the State to determine unilaterally and without process whether that misconduct has occurred immediately collides with the requirements of the Constitution." (Citations omitted) 419 U.S. at pp. 574–575, 95 S.Ct. at p. 736, 42 L.Ed.2d at pp. 734, 5.

*Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), cautions against an expansive reading of Goss. The main thrust of this opinion dealt with the immunity of school board members from suit under 42 U.S.C. § 1983— an issue we need not reach here in light of our disposition of plaintiff's other claims. At the end of the opinion, however, the court made the following comments about the scope of review the federal courts should accord to disciplinary decisions of high school officials:

"Given the fact that there was evidence supporting the charge against

respondents, the contrary judgment of the Court of Appeals is improvident. It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. . . . But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees."

The issue in *Goss* was characterized by the Court as follows: "Once it is determined that due process applies, the question remains what process is due." (419 U.S. at 577, 95 S.Ct. at 738, 42 L.Ed.2d at 737) The expulsion of Henry Alex requires this court to consider the same issue.

The court in *Goss* was very careful to limit the new due process rights it was according to high school students.

"We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formali-

ty and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process.

"On the other hand, requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action."

In the *Sill* case in this circuit, the court delineated the due process rights of students in similar language.

"Nor is the procedure required to afford due process of law of a fixed and invariable character; the requirements of due process frequently vary with the type of proceeding involved. . . The basic elements are notice and the opportunity to be heard by a fair and impartial tribunal legally constituted and having jurisdiction of the cause."

*Goss* and *Sill* evince the basic process due to students—adequate notice and a fair opportunity to be heard. While more formal requirements may be necessary for a thirty-day suspension than for a ten-day suspension as in *Goss,* a careful reading of the record convinces the court that the plaintiff's constitutional rights have been protected.

■ Exhibit D, attached to plaintiff's complaint, shows that plaintiff's parents were informed of the school board hearing dealing with plaintiff's suspension in a letter dated March 11, 1975, referring to a meeting to be held on March 25, 1975. According to paragraph 22 of plaintiff's complaint, the meeting was actually held on March 31, 1975, and continued until April 8, 1975. Thus, the plaintiff received notice *20 days* before the first board meeting was held to consider his case. This certainly is fair notice of a high school suspension proceeding. The plaintiff's further contention that he was not adequately informed of each charge filed against him by a teacher—see paragraph 19 of the complaint—does not raise to the level of a due process deprivation. So long as adequate notice of the suspension hearing itself is provided, the court sees no constitutional

issue involved in whether notice of each charge brought by a teacher be given at the exact time of the incident in question or at a subsequent date *before* the suspension hearing. The plaintiff also contends that he was never notified of the school regulations under which he was punished but he was clearly notified of the charges against him and this is sufficient for due process purposes.

■ Plaintiff's final—and strongest— argument is that the suspension hearing was not fair. The complaint outlines the nature of the hearing as follows:

"On March 31, 1975, the special meeting of the Board was convened and continued on April 8, 1975. At said hearings, plaintiff was still not notified of the specific rules he was alleged to have violated, although at some point, the defendants began to rely upon the printed material entitled "Discipline" contained in plaintiff's Exhibit B.

"The hearing panel consisted of five members of defendant board, and said hearing was conducted in the following manner:

(a) The five member panel sat at a table along with defendants Cutler, DeRubies and Allen, who were the principal witnesses against plaintiff and John Egan, Esquire, Solicitor for defendant Board.

(b) John Egan, Esquire, as Solicitor for defendant Board, acted in a number of conflicting capacities, to wit: as prosecutor presenting defendant's witnesses; as judge, ruling on plaintiff's counsel's motions and objections; and as advisor to the Board. In this latter capacity, in response to a Board member inquiry of what alternatives were available, he stated that expulsion was one of the alternatives.

(c) The five member panel of defendant Board consisted of different members at the two-part, continued proceedings.

(d) Defendant/members of the hearing panel on numerous occasions asked questions of impeached witnesses clearly designed to re-establish grounds for expulsion."

Exhibit F demonstrates that the plaintiff was represented by counsel prior to as well as at this hearing.

The plaintiff's argument, in essence, boils down to a contention that the School Board was not fair, unbiased, and impartial. He contends that the double role performed by the School Solicitor, see paragraph 23 of the complaint, supra, requires this court to find that the plaintiff was not accorded due process of law.

The court is aware of two recent cases in Pennsylvania State Courts involving similar factual situations to this case. *Horn v. Township of Hilltown,* 337 A.2d 858 (1975) (Pa. Supreme Court) involved the following factual pattern:

"The procedure followed at the zoning hearing board is the subject of this appeal. At the hearing board, the township was represented by its solicitor, Charles Wilson, who also served at the hearing as the zoning board's solicitor. Mr. Wilson conducted the meeting and ruled on evidence presented by appellants and on objections made to the township's evidence presented by Mr. Wilson, himself, when an objection was interposed by appellants. Thereafter, Mr. Wilson, as the zoning board's solicitor, advised the board in legal matters concerning appellants' case."

The court held that this procedure was too susceptible to prejudice to meet the requirements of procedural due process; it was not necessary for the plaintiff to show actual prejudice.

*Appeal of Feldman,* 346 A.2d 895 (1975) (Pa. Comm. Court), is even closer to the facts of this case. The plaintiff, a temporary professional school employee, was notified that his performance was rated unsatisfactory. The School Board meeting at which he was dismissed was conducted as follows:

"At the Board hearing subsequently convened, the School District's solicitor tried the case in support of the proposed action of dismissal. The same

attorney thereafter either prepared or assisted in the preparation of the Board's adjudication of dismissal." at 895, 6. The court invalidated this procedure, relying on *Horn.*

■ While the court is not bound by these decisions, they can be distinguished from the facts of this case. The *Goss, Wood,* and *Sills* cases, supra, all emphasized the limited nature of students rights to fair procedure while at the same time recognizing that such rights do exist. This court, as was the Supreme Court in *Goss,* is concerned about overwhelming the administrative facilities of schools and of diverting costs from other activities with excessively formalized disciplinary procedures. We can take judicial notice of the magnitude of disciplinary problems in public schools and of the large number of suspensions which appear necessary to keep students in line.[1]

It may well be that the school board was not neutral and unbiased. The same may be true of numerous school boards that make decisions of this type. *Goss* teaches us that our inquiry need be directed only to ensuring that the rudiments of fair procedure be followed. As long as a student is given a formal hearing by the school board and is represented by counsel, the court feels it is reasonable for the school solicitor to prosecute the case against him or her, rule on evidentiary questions, and advise the board as to possible action. See *English v. North East Board of Education,* 385 F.Supp. 1174 (W.D.Pa.1974).

Of course, this presents a possibility for abuse and prejudice. But to a certain extent, the federal courts must rely on the discretion, honor, and good judgment of school officials. The only alternative is to accord a right to appeal all suspensions to the federal courts—a process which would overwhelm the already crowded court dockets. The court thus holds that for a thirty-day suspension, it is not unconstitutional for a school solicitor to act in the dual roles of prosecutor and advisor to a school board as long as the student is represented by counsel and given an opportunity to present his side of the story. In the nature of things, it is the solicitor's duty to appear for the board. Outside counsel need not be engaged. Thus, again the plaintiff's factual allegations, even if proved, do not create a constitutional issue and his procedural claims will be dismissed.

It may also be noted that *Wood* implicitly held that a student has an avenue of access to the federal courts if a school board acts in a grossly unfair or arbitrary manner. The court denied a 1983 suit to review suspensions where there was "some evidence" in the record supporting the charges against the students. While this court is dealing with a motion to dismiss, the plaintiff's complaint contains as Exhibit C notices from teachers containing *ample* grounds for suspension entirely aside from the regulations. These notices include incidents of shouting obscenities in school halls and to teachers, disruptive behavior in class such as throwing objects around the room, and verbal assaults upon female students. Considering these incidents, the court sees nothing unfair in a thirty-day suspension. The notices furnished ample due process insofar as the nature of the charges to be heard was concerned.

(D) *Equal Protection.*

The plaintiff's equal protection claims have already been disposed of in the previous discussion. The court's holding that the high school regulations are not unconstitutionally vague disposes of the facial invalidity type of the equal protection claim. And the court's holding that the plaintiff was accorded constitutional due process disposes of the "as applied" type of equal protection claim.

An appropriate Judgment Order will be entered.

---

1. Footnote 10 to Mr. Justice Powell's dissenting opinion in *Goss,* 419 U.S. at p. 592, 95 S.Ct. at p. 745, 42 L.Ed.2d at p. 745 illustrates the magnitude of this problem.