**Jedidiah SCHMADER, By and Through His Parent and Natural Guardian, Michelle SCHMADER,**

**v.**

**The WARREN COUNTY SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2002.

Decided Oct. 9, 2002.

Arthur J. Stewart, Warren, for appellant.

James C. Blackman, Warren, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

The Warren County School District (School District) appeals from an order of the Court of Common Pleas, 37th Judicial District of Pennsylvania, Warren County Branch (trial court), directing the School District to rescind the disciplinary action taken against Jedidiah Schmader (Jedidiah) and to expunge any reference to the underlying incident from Jedidiah's permanent record.

On February 2, 2001, Jedidiah, a third-grade student at South Street Elementary School in Warren, Pennsylvania, was charged with one count of Miscellaneous Inappropriate Behavior pursuant to Section IV(O) of the School District's Discipline Code for his alleged involvement in the threatened assault of another student by a third student, Tyler Gelotte (Tyler). Jedidiah was immediately suspended for one-half day, and on February 27, 2001, the School District conducted a formal student discipline hearing on the matter.

At the hearing, Jedidiah testified that on February 1, 2001, he and Tyler were playing at his home after school when he found a plastic throwing dart with a metal tip and showed it to Tyler. He stated that Tyler then took the dart and told him that he wanted to use the dart to hurt another student, Aaron Johnson (Aaron). Jedidiah stated that at that point, he told Tyler that if he wanted to hurt Aaron to go ahead, but he did not want to get involved in the matter. He stated that he then left Tyler and went into his house and didn't tell his mother because she wasn't home or his sister because he forgot.

Jedidiah stated that he did not see Tyler or the dart until the next day when he was called to the principal's office of the school, Principal Nichols' office, after Tyler was apprehended with the dart. In Principal Nichols' office, Jedidiah stated that he admitted that the dart belonged to him but when asked what he intended to do with the dart, he didn't say anything because he did not want to hurt his friend. Jedidiah later testified that he thought that Tyler was going to hurt Aaron but that he didn't want him to hurt Aaron because Aaron was his friend. However, he stated that he didn't tell Aaron because Tyler would probably make something up.

For his testimony, Principal Nichols read the anecdotal record he made following the conversations with Jedidiah and Tyler and their parents on February 2,

2001.[1] According to that record, Tyler was in Mrs. Trubic's classroom on February 2, 2001, when he told another classmate that he had a dart and was going to throw it at Aaron. After the student informed Mrs. Trubic of Tyler's comment, she relayed the information to Principal Nichols. Upon questioning, Tyler told Principal Nichols that the dart belonged to Jedidiah, that the boys had talked about Aaron and that Jedidiah gave him the dart and he brought it to school intending to throw it at Aaron. Jedidiah was then called to the principal's office and admitted that the dart was his and both Jedidiah's and Tyler's parents were called. The record indicated that when Jedidiah's mother, Mrs. Schmader, asked what they were going to do with the dart, Jedidiah's response was "to make him bleed" and Tyler's response was "not to ... was to hurt him, but not bad." [2] Principal Nichols then decided to suspend both students for the rest of the day, and told the boys' parents that he would report the incident to the superintendent of schools.

Following the hearing, the hearing officer issued his Recommended Report, in which he found Jedidiah guilty of one charge of Miscellaneous Inappropriate Behavior. Acknowledging that Jedidiah had already served one-half day of out-of-school suspension, the hearing officer recommended that Jedidiah be issued three days of after-school detention not to exceed 15 minutes per day. On March 12, 2001, the School District adopted the hearing officer's Recommended Report.

■ Jedidiah then appealed the School District's determination to the trial court purportedly pursuant to 22 Pa.Code § 12.8(b)(2),[3] which allows a student who disagrees with the results of the formal hearing to seek recourse in the appropriate court of the Commonwealth. Determining that the Miscellaneous Inappropriate Behavior provision of the Disciplinary Code was unconstitutionally vague by failing to provide eight-year-old Jedidiah with notice that his failure to warn school authorities about potential harm to another student constituted inappropriate behavior and would result in disciplinary action, the trial court ordered the School District to rescind any action against Jedidiah and expunge any reference of the incident from his record. This appeal by the School District followed.[4]

1. Principal Nichols also stated that students are provided with a copy of the School District's Handbook (Handbook), which includes the Discipline Code, and that the Discipline Code is discussed in school will all students.

2. At the hearing, Mrs. Schmader denied that Jedidiah ever stated that he intended to make Aaron bleed. Jedidiah also denied making the statement. However, upon her cross-examination of Principal Nichols, he reaffirmed that he had heard Jedidiah make that statement.

3. 22 Pa.Code § 12.8 provides, in relevant part:

(a) Education is a statutory right, and students must be afforded all appropriate elements of due process if they are to be excluded from school. In a case involving a possible expulsion, the student is entitled to a formal hearing, which is a fundamental element of due process.

(b) A formal hearing is required in all expulsion actions. This hearing may be held before the board of school directors or an authorized committee of the board, or a qualified hearing examiner appointed by the board ...

* * *

(2) Where the student disagrees with the results of the hearing, recourse is available in the appropriate court of the Commonwealth. If it is alleged that a constitutional issue is involved, the student may file a claim for relief in the appropriate Federal district court.

4. Our scope of review of a school district's adjudication, where a complete record is

The School District contends that the trial court erred by concluding that the Miscellaneous Inappropriate Behavior provision of its Discipline Code was unconstitutionally vague. It is well established that it is fundamental to due process that a statute or regulation must not be so vague as to require persons of ordinary intelligence to guess at its meaning or its possible application. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). However, the Constitution does not require impossible standards; all that is required is that the language convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice. *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

Because schools need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the United States Supreme Court has determined that school disciplinary rules need not be as detailed as criminal codes. *See Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). A looser standard of constitutional review of such school regulations is appropriate because greater flexibility must be afforded to regulate the conduct of children as opposed to adults. *Alex v. Allen*, 409 F.Supp. 379 (W.D.Pa.1976).

The provision at issue in this case, Section IV(O) of the School District's Discipline Code, provides:

Any student who engages in inappropriate behavior, not otherwise specifically addressed in this Code, including but not limited to self-destructive behavior, behavior that may be harmful to others or the property of others, or other behavior which negatively reflects the values of this discipline code or the philosophy, goals and aims of the Warren County School District, will be subject to suspension or other disciplinary action. The discipline may include action by the administration as well as possible referral to the hearing officer for further discipline.

(Handbook, R.R. at 83a–84a).[5]

In its 1925 statement, the trial court clarified for purposes of appeal that it did not find the entire Miscellaneous Inappropriate Behavior provision of the School District's Discipline Code unconstitutionally vague or that the School District was without authority to punish an eight-year-old student for not warning authorities when he knew that someone intended to injure another student. Instead, it held only that pursuant to the language used in the Miscellaneous Inappropriate Behavior provision, an eight-year-old student could not have known that when someone told him or her that that they planned to injure another student at school, he or she should tell someone about the threat.

made, is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Ream v. Centennial School District*, 765 A.2d 1195 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 566 Pa. 672, 782 A.2d 551 (2001).

**5.** In addition to the Miscellaneous Inappropriate Behavior provision, Section II of the School District's Discipline Code provides

that "this policy may apply outside of school property or school related activities if there is misconduct that has a direct and immediate tendency to influence the conduct of other people while in the school room." (Handbook, R.R. at 80a). The Handbook also provides that "[i]t is the responsibility of the students to ... (2) Be willing to volunteer information in matters relating to the health, safety, and welfare of the school community and the protection of school property." (Handbook, R.R. at 86a).

■ However, contrary to the trial court's explanation, any eight-year-old child knows or should know that knowledge of the intent of another child to throw a dart in order to injure a third child is "behavior that may be harmful to others," and, therefore, is wrong, and that if the action results in harm on school property, he or she will be in "trouble" at school. No more should be needed to impose appropriate discipline, and, therefore, we cannot say that Section IV(O) of the School District's Disciplinary Code is unconstitutionally vague as to Jedidiah.

■ Moreover, three days of a 15–minute after school detention does not rise to a constitutional deprivation of any type of property right requiring redress through the judicial system. As we stated in *In re JAD*, 782 A.2d 1069, 1071 (Pa.Cmwlth. 2001), *petition for allowance of appeal denied*, 568 Pa. 708, 796 A.2d 987 (2002):

> Different rights attach to expulsions and suspensions under 22 Pa.Code §§ 12.6 and 12.8 (Code). Expulsion is exclusion from school by a board of education for a period exceeding ten school days, and it requires a formal hearing. 22 Pa. Code § 12.6(b)(2). If a student disagrees with the results of the formal hearing, the student has a right to seek recourse in the appropriate court of the Commonwealth. 22 Pa.Code §§ 12.8(b)(2) and 12.8(c). **The Code does not provide any recourse from a school district's decision to suspend a student for fewer than ten days.** Moreover, in *Flynn–Scarcella. v. Pocono Mountain School District*, 745 A.2d 117, 120 (Pa.Cmwlth.2000), we stated,
>
> > The law is clear that in Pennsylvania, local school boards have broad discretion in determining school disciplinary policies. Therefore, when one attacks a school board action on matters committed by law to its discretion, he has

> > a heavy burden, as the courts are not prone to interfere unless it is apparent that the school board's actions are arbitrary, capricious, and prejudicial to the public interest. In the absence of a gross abuse of discretion, the courts will not second-guess policies of the school board. (Citations omitted).

(Emphasis added).

Although 22 Pa.Code § 12.8(a) provides that "education is a statutory right, and students must be afforded all appropriate elements of due process if they are to be excluded from school," in this case, the only discipline imposed as a result of the hearing (because the half-day suspension had been imposed prior to the hearing) was "more school," i.e., 15 minutes of after-school detention for three school days. If there is no recourse from a school district's decision to suspend a student for fewer than ten days, then where, as here, no expulsion or suspension is imposed and only the school day is extended, there should be no recourse to the courts. This is especially so because the 15–minute detention for three days was not imposed so much to punish Jedidiah as it was to teach him a lesson that he should attempt to prevent harm from befalling another human being.

Accordingly, the decision of the trial court is reversed.

### ORDER

AND NOW, this *9th* day of *October,* 2002, the order of the Court of Common Pleas, 37th Judicial District of Pennsylvania, Warren County Branch, No. 214 of 2001, dated August 27, 2001, is reversed.

DISSENTING OPINION BY Judge FRIEDMAN.

I must respectfully dissent. Unlike the majority, I agree with the trial court that

the Miscellaneous Inappropriate Behavior provision (MIB provision) of the Warren County School District's (School District) Discipline Code is unconstitutionally vague as applied to Jedidiah Schmader (Jedidiah).

The majority reminds us that, because schools need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the United States Supreme Court has determined that school disciplinary rules need not be as detailed as criminal codes. *See Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Further, a looser standard of constitutional review of such school regulations is appropriate because greater flexibility must be afforded to regulate the conduct of children as opposed to adults. *Alex v. Allen,* 409 F.Supp. 379 (W.D.Pa.1976). I do not question these standards; however, as acknowledged by the majority, it is fundamental to due process that a statute or regulation must not be so vague as to require persons of ordinary intelligence to guess at its meaning or possible application. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Accordingly, an enactment must define the prohibited conduct with sufficient definiteness to inform an ordinary individual as to what conduct is prohibited and must define the prohibited conduct in a manner discouraging arbitrary and discriminatory enforcement. *Killion v. Franklin Regional School District,* 136 F.Supp.2d. 446 (W.D.Pa.2001); *Wiemerslage ex rel. Wiemerslage v. Maine Township High School District 207,* 824 F.Supp. 136 (N.D.Ill.1993), *aff'd,* 29 F.3d 1149 (7th Cir.1994). Here, the trial court determined that the MIB provision of the School District's Discipline Code ran afoul of both these principles.

The MIB provision, set forth in section IV(O) of the Discipline Code, provides:

Any student who engages in inappropriate behavior, not otherwise specifically addressed in this [Discipline] Code, including but not limited to self-destructive behavior, behavior that may be harmful to others or property of others, or other behavior which negatively reflects the values of this [D]iscipline [C]ode or the philosophy, goals and aims of the Warren County School District, will be subject to suspension or other disciplinary action. The discipline may include action by the administration as well as possible referral to the hearing officer for further discipline.

(R.R. at 83a–84a.) In considering this language, I agree with the trial court's assessment that the MIB provision of the Discipline Code "does not put an eight-year-old student on notice that a failure to inform school authorities of a threat made off school property is a violation."[1] (Trial ct. op. at 10, R.R. at 105a.)[2]

---

1. On November 1, 2001, in response to the School District's filing of matters complained of on appeal, the trial court filed a supplementary opinion pursuant to Pa. R.A.P.1925 to clarify its order of August 27, 2001. (R.R. at 113a–14a.) In that opinion, the trial court explained that it did not hold the "entire" MIB provision unconstitutionally vague and did not hold that the School District cannot punish a student for failing to warn school authorities when he knows of a plan to harm another student; rather, it held that "if the School District wants to punish an eight-year-

old student for not warning school authorities when he knows of some plan to hurt another student, it must tell him in advance of his obligation to do so in language that the child is able to understand." (R.R. at 113a.)

2. In addition, the trial court concluded that the MIB provision is a "catchall provision," unlimited by any articulated restrictions, and, thus, "the School District retains unlimited and unfettered discretion to punish a wide range of acts or omissions occurring both on or off school property." (Trial ct. op. at 10,

In holding otherwise, the majority reasons that

> any eight-year-old child knows or should know that knowledge of the intent of another child to throw a dart in order to injure a third child is wrong, and that if the action results in harm on school property, he or she will be in 'trouble' at school. No more should be needed to impose appropriate discipline, and, therefore, we cannot say that Section IV(O) of the School District's Disciplinary Code is unconstitutionally vague as to Jedidiah.

(Majority op. at 600.) However, in applying such reasoning, I believe the majority loses sight of the question here. We are not asked to decide whether an eight-year-old should know whether it is wrong for someone to intend to injure a child with a dart; there is no question that this is so. Rather, we must determine whether an eight-year-old can read the language of the MIB provision and understand that by forgetting to tell school authorities of a classmate's vague threat made off school property and during non-school hours he violates that provision and subjects himself to disciplinary action. Even under the relaxed constitutional standards applicable here, I cannot agree that the MIB provision defines proscribed conduct with sufficient clarity to provide the necessary warning to Jedidiah that his action, or, more correctly, inaction, would be both prohibited and punishable.[3]

The majority also accepts the School District's argument that the trial court erred in not affording the School District maximum discretion in its decision in light of the minimal discipline imposed. Noting that school suspensions of less than ten days normally are not reviewable by the courts, *see In re JAD*, 782 A.2d 1069 (Pa. Cmwlth.2001), *appeal denied*, 568 Pa. 708, 796 A.2d 987 (2002), the majority concludes that "three days of a 15–minute after school detention does not rise to a constitutional deprivation of any type of property right requiring redress through the judicial system."[4] (Majority op. at 600.) The

---

R.R. at 105a.) That the MIB provision is subject to arbitrary and discriminatory enforcement is evidenced by the fact that, although they played very different roles in the offense, Jedidiah and Tyler Gelotte received identical punishments.

3. The School District contends that it is not required to give an exhaustive list of what qualifies as inappropriate or harmful behavior, and, in fact, relies on cases from numerous courts that have upheld school disciplinary rules containing generalized terms similar to those in the challenged MIB provision. The majority does not discuss these cases, but I note that, what the School District fails to acknowledge in making this argument is that the trial court here does not conclude that the MIB provision is unconstitutionally vague on its face, but, rather, holds that it is unconstitutionally vague as applied to Jedidiah. As stressed by the trial court, Jedidiah was an eight-year-old child who committed no harmful act himself but, rather, simply failed to report the possible intended action of another

based on a threat made outside school. Because of these unique facts, the cases relied upon by the School District are easily distinguished and do not support the School District's position. Specifically, the School District relies on *Fraser, Brian A. ex rel. Arthur A. v. Stroudsburg Area School District*, 141 F.Supp.2d 502 (M.D.Pa.2001), *Alex*, and *Delisio v. Ellwood City Area School Dist.*, 70 Pa. D. & C.2d 524 (1975). In each of these cases, the imposition of discipline on the student was upheld; however, all these cases concern older students who committed the objectionable action themselves at school or at a school-sponsored function. None involves the judgment of an eight-year-old as to the consequences of neglecting to inform someone at school of another child's intent, heard off school property, to harm a third child. Because that is the situation here, I believe the School District's argument must fail.

4. The majority appears to forget that Jedidiah was not only seeking to avoid what he perceived as unjust detention but also was

majority acknowledges that 22 Pa.Code § 12.8(a) provides students with a statutory right to education and affords students appropriate due process if they are to be excluded from school; however, the majority points out that, in this case, Jedidiah's discipline was not exclusion from school but, instead, was "more school." The majority then reasons that "if there is no recourse from a school district's decision to suspend a student for fewer than ten days, then where, as here, no expulsion or suspension is imposed and only the school day is extended, there should be no recourse to the courts." (Majority op. at 600.) I cannot agree with this analysis.

Initially, I would disagree that after-school detention is the equivalent of "more school" for Jedidiah. Clearly, the protected right to an education in 22 Pa.Code § 12.8(a) is the guarantee that a student will not be denied classroom instruction without due process. Because such "schooling" does not take place during the extended school day that comes with detention, Jedidiah's punishment does not give him any "more school." [5]

Moreover, in adopting this view, the majority loses sight of the fact that the School District itself chose to take the matter to a formal hearing, thereby subjecting the decision to review under 22 Pa.Code § 12.8(b)(2).[6] In its opinion, the majority presumes to invent a rule that would preclude recourse to the courts in cases where a student's discipline following a formal hearing is something other than expulsion or suspension in excess of ten days. However, 22 Pa.Code § 12.8(b)(2) makes judicial recourse available in all cases where

"the student disagrees with the results of the hearing." The opportunity to seek redress in the courts is tied only to the holding of a formal hearing; it does not depend on the discipline ultimately imposed.

Further, adopting the School District's position that we consider the minimal nature of the discipline would require that I ignore my prior determination that the MIB provision is unconstitutionally vague as applied to Jedidiah. As the trial court stated in its November 1, 2001 opinion, the School District certainly can punish a student for failing to warn school authorities of a plan to harm another student, and, in this day and age, it is more important than ever that school authorities be told by students of impending danger. Nonetheless, if an eight-year-old student fails to do so, we cannot punish him if we never bothered to tell him he should *in words he is able to understand.* (R.R. at 113a–14a.) I have no doubt that the School District's MIB provision is designed to serve interests that are both important and numerous, and I recognize that the School District imposed very minimal punishment; nevertheless, I will not sanction the disciplining of students in cases where they had no reason to anticipate punitive consequences.[7]

Accordingly, I would affirm.

---

seeking expungement of all reference to the underlying incident from his record, a disciplinary procedure with a much more far-reaching effect.

5. Indeed, I am baffled by the majority's attempt to equate school attendance with after-school detention, something clearly meant as punishment for a student.

6. In this case, where Jedidiah was suspended for one-half day and required to spend fifteen

minutes per day after school for three days, the trial court ordinarily would not even have jurisdiction, and it happened here only because the matter was referred to a Hearing Officer as a case of possible expulsion pursuant to 22 Pa.Code § 12.8(a). *See* 22 Pa.Code § 12.8(b)(2).

7. I am not persuaded otherwise by the majority's statement that "the 15–minute detention

for three days was not imposed so much to discipline Jedidiah as it was to teach him a lesson that he should attempt to prevent harm from befalling another human being." (Majority op. at 600.) In its brief to this court, the School District suggests much the same thing, stating that, even if Jedidiah did not have advance notice that his action was proscribed and subject to discipline, it is a lesson well learned. (*See* School District's brief at 21–22). I would suggest that the lesson learned by Jedidiah in receiving a punishment for action that he could not reasonably anticipate would merit discipline, is not the one that the School District imagines.

Going a bit further, I would add that, certainly, Jedidiah's parent, as demonstrated by her aggressive pursuit of this action, believes that there is another valuable lesson for Jedidiah to learn. As stated in Appellee's brief.

The Appellee does not take issue with noble statements set forth in [the School District's] argument concerning the duties of the School District. However, it is Appellee's position that concomitant with the duties of the School District, the District also has responsibility for following the law, and the Appellee believes that one of the most valuable lessons a student can learn aside from ... community values, respect for authority, and for social, moral and political values, is to also learn that he, no matter what his age, is protected by the constitution of the United States of America.

(Appellee's brief at 11.)